[No. 3920.]

THE LOWER LATHAM DITCH COMPANY v. THE LOUDEN IRRIGATING CANAL COMPANY ET AL.

1. RES JUDICATA—PARTIES—WATER RIGHTS.
One of the essential elements necessary to make a judgment in one case *res judicata* in another is identity of parties in each. A judgment against a water commissioner enjoining him from shutting down the headgate of certain ditches in favor of a prior appropriator further down the stream, in an action in which the prior appropriator was not a party, although he had notice of the action, is not *res judicata* in an action by the prior appropriator against the owners of the ditches in whose favor the former judgment was rendered.

2. WATER RIGHTS—LACHES—ABANDONMENT—ESTOPPEL.
The fact that an appropriator of water was for several years short of water, and knew that his shortage was caused by diversions made by subsequent appropriators above him on the stream, but made no protest against such diversions, is not such laches or acquiescence as would amount to an abandonment, or estop him from asserting his prior right as against such subsequent appropriators.

3. ESTOPPEL—KNOWLEDGE OF TITLE—INTENTION TO DECEIVE.
Before the conduct of one party will create an estoppel in favor of another with respect to the title of the subject-matter of dispute between them, it must appear that the party against whom the estoppel is sought to be established was apprised of the true state of his own title, and that by his conduct he intended to deceive, or was guilty of such negligence as to amount to a fraud upon the other, and that the other party was not only destitute of knowledge regarding the true state of the title, but also of means of

acquiring such knowledge. There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title, when the effect of the estoppel is to forfeit his property and transfer its enjoyment to another.

4. WATER RIGHTS—PRIORITY—DEFENSE.

In an action by a prior appropriator of water against subsequent appropriators above him on the same stream, to compel them to permit water to flow by their headgates sufficient to supply his appropriation, it is no defense that other parties with appropriations junior to those of defendants are diverting water which, if permitted to flow down the stream, would supply plaintiff's appropriation. A prior appropriator may bring an action against any or all junior appropriators to enforce his rights, leaving them to settle their priorities amongst themselves.

5. LIMITATION—COLOR OF TITLE—PAPER TITLE.

Color of title necessary to support a plea of the seven years' statute of limitation, under section 2923e, 3 Mills' Ann. Stats., must be a paper title, and where a junior appropriator of water attempts to set up against a prior appropriator, rights acquired by virtue of an adverse user for more than seven years, he must show that the adverse user and possession is under a paper title purporting to convey to him the priorities of the senior appropriator.

6. WATER RIGHTS—LOSS BY PERCOLATION.

In an action by a prior appropriator of water against junior appropriators to prevent them from diverting water till his ditch has been supplied, it is no defense to say that if the water is permitted to flow by defendants' headgates a considerable portion of it would be lost by percolation before it reached plaintiff's ditch.

*Error to the District Court of Larimer County.*

Mr. H. N. HAYNES, for plaintiff in error.

Mr. FRANK J. ANNIS, Messrs. ROBINSON & LOVE, Mr. GEORGE W. BAILEY and Messrs. GARBUTT & GARBUTT, for defendants in error.

MR. JUSTICE GABBERT delivered the opinion of the court.

Plaintiff in error originally instituted suit against each ditch company separately. In each action the individual defendants were joined. The questions in the several cases being the same, they were consolidated for the purposes of

trial. Upon the issues formulated there was a trial to the court, which resulted in judgment in favor of the defendants. Plaintiff brings the case here on error. For convenience, the parties will be designated plaintiff and defendants, the same as in the court below.

The object of the action is to compel defendants to recognize the decreed priorities of plaintiff to the waters of the South Platte river. The facts, so far as necessary to notice at the outset, in order to understand the controversy between the parties, are, briefly, as follows: Each of the ditches of the respective ditch companies has been decreed, or has succeeded to priorities adjudicated under the general irrigation statutes of the state. The ditch of plaintiff draws its supply from the South Platte about one and one half miles below the mouth of the Big Thompson, a tributary of that stream. Its headgate is located in water district No. 2, and its priorities were adjudicated in the district court of Arapahoe county. The ditches of the defendant ditch companies draw their supply from the Big Thompson, their several headgates being located in water district No. 4, and their priorities were adjudicated in the district court of Boulder county. Each of these water districts is located in water division No. 1. Relatively, the priorities of the respective ditches, as shown by the several adjudication decrees, are such that certain of those of plaintiff are in advance of the priorities of defendant ditch companies.

Defendants interposed defenses by which they seek to establish that plaintiff is no longer entitled to a distribution of water in times of scarcity, in accordance with its decreed priorities, as against their rights, and that they are entitled to have their priorities satisfied without regard to those of plaintiff; or, in other words, by reason of defenses pleaded, the latter, as against them, has lost its rights established by the decree upon which it relies, and that they are entitled to a distribution of water under the decree entered in water district No. 4, without regard to the decree rendered in district No. 2. The pleadings and evidence disclose that by reason

of the attitude and acts of the defendant ditch companies, the individual defendants charged with the duty of distributing water in their respective water districts, plaintiff has been deprived of water to which it is entitled under the decree establishing its priorities, unless one or more of the affirmative defenses of defendants defeat its rights evidenced by that decree. The vital question is, do the respective adjudication decrees measure the rights of the parties, or are they to be determined upon one or more of the defenses interposed by defendants? These defenses are:

1. A judgment which they claim is res judicata of the questions involved in this action.

2. Estoppel by laches and acquiescence.

3. That in water districts located above No. 2, which includes the South Platte river above the headgate of plaintiff's ditch, and tributaries emptying into the river above that point, are numerous ditches drawing their supply of water from these streams, the priorities of which, according to the respective decrees as entered of record in the respective water districts, are junior to those of the parties to this proceeding, and that by reason of their diversion of water, the shortage of which plaintiff complains is occasioned.

4. Diversion of water from the Big Thompson for more than seven years next preceding the date of the commencement of this action, under color of title in good faith, adversely to the claims of plaintiff, and all persons diverting water from the South Platte river.

5. It is also claimed by defendants that the evidence establishes the fact that the waters of the Big Thompson reaching their respective headgates would not reach that of the plaintiff if permitted to flow down the stream, by reason of the character of the bed of the Big Thompson.

Priority of appropriation for beneficial use has always been recognized as the foundation upon which water rights depend in this jurisdiction. This doctrine first found expression in the courts, and has since been recognized by our fundamental and statutory law on the subject. For the purpose of hav-

ing priorities judicially determined, the legislature enacted laws for that object. Unfortunately, the water districts as originally established did not in each instance embrace the entire drainage of a main stream. To obviate the difficulties resulting from these conditions, water divisions were created, which practically embrace all the drainage of a given stream. Provision has also been made for the appointment of an official in each of these divisions whose duty it is to direct that the waters of the streams of each division be distributed in accordance with the adjudication decrees of the districts included in each water division, so that in effect these decrees are to be treated as one, and the water distributed accordingly. Under such regulations the acts of the individual defendants, as well as those of the defendant ditch companies in refusing to distribute the water of the South Platte and its tributary, the Big Thompson, or to recognize the rights of plaintiff in accordance with the adjudication decrees in districts 2 and 4, are illegal, against which plaintiff is entitled to relief, unless, as we have said, the rights of the parties to this controversy are no longer dependent on such decrees, but are to be determined upon one or more of the defenses interposed in this action.

The judgments upon which defendants rely as *res judicata* of their rights in this action were rendered in suits commenced by them separately in the district court of Larimer county on the 16th day of July, 1890, against one William A. Bean, who at that time was the water commissioner in water district No. 4, to compel him to distribute the water of the Big Thompson to each respectively, in accordance with the rights of each as evidenced by the adjudication decree entered in that district. No other parties were made defendants to these actions. It appears that they were commenced because the then superintendent of water division No. 1, at the instance of plaintiff, had directed the water commissioner in district No. 4 to close down the respective headgates of the ditches of plaintiffs in those actions (defendants here), so as to permit the water of the Big Thompson to flow down to the head-

gate of the ditch company, plaintiff in this action, or had practically directed that the waters of the streams included in water districts Nos. 2 and 4, so far as the parties in this action are concerned, be distributed in accordance with the respective decrees in those districts, considered as a whole. The complaint in neither action, however, contained any averments to this effect, but after stating the need of water, and the decreed priorities in water district No. 4, alleged that the water commissioner " threatens to shut down the headgate of plaintiff's said canal, so as to prevent the plaintiff from taking water so decreed to it as aforesaid, and so used by it, as herein stated." It is claimed that the present plaintiff company was requested to defend these actions; that copies of the papers served on the water commissioner were sent to it, but that it gave the matter no attention whatever. The prayer of the complaint in each case was to the effect that the water commissioner of district No. 4 be restrained from shutting down the headgate of plaintiff's ditch, so as to deprive it of the water to which it is entitled under the adjudication decree in district No. 4. The judgment in each case which was rendered by default, against the commissioner, directed that he desist and refrain from so distributing or apportioning the waters of the Big Thompson as to allow any, when needed by plaintiff, to flow past the headgate of its ditch, except when such waters are needed by consumers through ditches whose headgates are located on that stream below the headgate of plaintiff's ditch, and whose priorities have been decreed superior to those of plaintiff by the adjudication decree in district No. 4.

The plaintiff in this action was not a party to either of the causes in which the judgments were rendered upon which defendants rely as *res judicata* of the subject-matter of this controversy. It may have had notice, or may have known of the pendency of those actions, but not in a manner which gave the court jurisdiction to determine its rights to the subject-matter in dispute in those causes. One of the essential elements necessary to render a judgment pronounced in

a given case *res judicata* in another, is identity of parties in each. *Benz v. Hines*, 3 Kan. 390 ; Bouvier, title "Res Judicata." These judgments lack this requisite.

It is claimed by defendants that from the time of the issuance of *ex parte* injunctions in the causes against water commissioner Bean, as well as from the date when final judgments were rendered in those actions, which was on the 28th day of October, 1890, restraining him from distributing the waters of the Big Thompson, except in accordance with the adjudication decree rendered in water district No. 4, that plaintiff has acquiesced in those judgments; that parties dependent upon a supply of water from the ditches of defendant companies have increased their acreage, and that improvements have been made upon the faith of those judgments, under the belief that they settled their rights to the use of water as against the plaintiff, and that the action of the latter was such as to lead consumers under the ditches of the former to believe that these judgments would never be questioned.

It is also claimed that plaintiff had notice of the purport of the judgments, and at various times from July 16, 1890, down to the date when this action was commenced, was frequently unable to obtain sufficient water from the river to supply its priorities, and that such shortage, to the knowledge of plaintiff, was occasioned by the diversion of defendant ditch companies during this period. The evidence as to whether or not plaintiff knew of the commencement of these actions, is conflicting. There is also conflict in the testimony regarding its knowledge of the rendition of these judgments and their purport; but these matters are not controlling. The evidence may establish that from July, 1890, down to the date when this suit was instituted, plaintiff may have been short of water, which it knew was caused by the diversion of defendant companies' ditches from the Big Thompson. No protest against this action was made. The supply of water in the streams of this state is variable. In times of low water in a stream, or its tributaries, which is the common source of supply for many ditches, some will be unable to obtain their

full share. If a failure of one diverting water from a stream to protest every time a shortage in his supply is occasioned by another withdrawing water to which he is not entitled, is to be construed as laches or acquiescence, amounting to an abandonment, priorities as determined under the statutes would be of little value. If an estoppel has been established against plaintiff, it must be upon the ground that its action has resulted in an abandonment of its rights, as evidenced by the adjudication decree, and that they have become vested in defendant ditch companies. They were bound to take notice of the rights of plaintiff as determined by this decree. They could not rely upon decrees in their favor in actions to which plaintiff was not a party and which in no manner settled its rights. Although plaintiff may have known of these actions and judgments, such knowledge was no notice to it that title to its priorities had been assailed. There is nothing in the evidence from which to infer that its silence was prompted by an intention to deceive the defendant companies with respect to their rights, nor was its action in this respect negligence to such a degree as to amount to constructive fraud.

We will not attempt to mention all the elements of estoppel as sought to be established in this case, it being sufficient for the purposes of this action to state that before the conduct of one party will create an estoppel in favor of another with respect to the title of the subject-matter of dispute between them, it must appear that the party against whom such estoppel is sought to be established was apprised of the true state of his own title; that by such conduct he intended to deceive or thereby was guilty of such negligence as to amount to a fraud; that the other was not only destitute of all knowledge regarding the true state of his title, but of the means of acquiring such knowledge. There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title, when the effect of the estoppel is to forfeit his property, and transfer its enjoyment to another. *Boggs v. Merced M. Co.*, 14 Cal. 279; 1 Story's Eq. Jur. § 391; 2 Pomeroy's

Eq. Jur. §§ 807, 817;  *Water Supply & Storage Co. v. Tenney*, 24 Colo. 344.

In our opinion the evidence wholly fails to establish either of these essential elements of estoppel.

Certain of the priorities of plaintiff are in advance of those of the defendant ditch companies.   When required, it is entitled to have them supplied as against the defendant companies and all others junior in point of time.   It may be that others divert water from the river, which results in depriving plaintiff of its rights, but it is not concerned in settling the relative priorities between ditch companies whose rights are junior to its own; that is a matter which they must settle between themselves.   The acts of the defendant ditch companies, in supplying their priorities junior to those of plaintiff, at a time when the latter requires the water thus diverted, is an invasion of its rights.   If the former permits others to divert water to which they are entitled, or which, if not diverted, would be sufficient to supply the needs of plaintiff, that does not license them to wrong plaintiff, because others have wronged them.   In considering the joinder of defendants to an action for the wrongful diversion of water, the late Justice Elliott, after illustrating the necessity for permitting such joinder, in speaking of the rights of a prior appropriater to join as defendants those whose rights were junior, said:

"He may bring and maintain an action jointly against all parties junior in right to himself, whenever the result of their acts, either joint or several, deprives him of his better right to the use of the water, or substantially interferes therewith. He may thus secure protection to his own priority, and leave the several junior appropriators to settle their relative priorities among themselves."   *Saint v. Guerrerio*, 17 Colo. 448.

The fact, therefore, that others junior in point of time to either of the parties to this action may have diverted water from the river above the mouth of the Big Thompson, which, if permitted to flow down the stream, would have supplied the needs of plaintiff, so that the defendant ditch companies

could have continued their diversion from the Big Thompson, without injury to the plaintiff, was not a defense which the defendants could interpose.

It is contended by counsel for plaintiff that the defense of the defendants based upon the statute of limitations, is insufficient, for the reason that it does not allege payment of taxes, and that the evidence establishes that they have no color of title to the subject-matter of controversy. It is not necessary to determine the question of the failure to plead payment of taxes, or whether or not the statute is applicable to water rights, as the evidence fails to disclose that defendants have a paper title such as the statute requires, upon which to base their claim to the use of the waters from the Big Thompson, as against the rights of plaintiff. Color of title, under the statute, must be based upon a paper title. 3 Mills' Ann. Stats. sec. 2923e; *De Foresta v. Gast*, 20 Colo. 307; *Knight v. Lawrence*, 19 Colo. 425.

The decree in water district No. 4 by which the priorities of defendants are established, is but evidence of their rights. It does not purport to be adverse to the rights of plaintiff as established by the adjudication decree in water district No. 2. Defendants now seek to establish their rights to the priorities awarded plaintiff under the latter decree by virtue of an adverse user for more than seven years prior to the time when this action was commenced, but the statute upon which they rely cannot be invoked except it appears that their user and possession of the priorities of plaintiff is upon a paper title, which purports to convey to them the priorities of the latter. *Warren v. Adams*, 19 Colo. 515. The decree upon which they rely does not purport to convey such rights.

The final question relates to the testimony on the subject that the water which defendants divert from the Big Thompson, if permitted to flow by their headgates, would not reach the headgate of the ditch of plaintiff. There is testimony to the effect that on account of the character of the bed of the Big Thompson, considerable time would be required for the water passing the headgates of the ditches of defendants to

reach the river, and that in flowing down a considerable quantity would be lost through percolation.     There is no evidence that the waters would not reach the river, and although it may flow down the Big Thompson slowly, and a considerable volume be lost, inasmuch as it would eventually reach the river, and could there be utilized by plaintiff, we do not think that this defense has been established.

Under the facts plaintiff was clearly entitled to a judgment in its favor, directing that the waters of the Big Thompson and South Platte, as between the parties to this controversy, be distributed in accordance with the adjudication decrees rendered in water districts 2 and 4.     The judgment of the district court is, therefore, reversed, and the cause remanded, with directions to render judgment in accordance with the views herein expressed.

*Reversed and remanded.*