[No. 7989.]

## ROGERS ET AL V. NEVADA CANAL COMPANY ET AL.

1. INJUNCTION—*When Allowed.* The wrongful diversion of water to the injury of the senior appropriator may be restrained by injunction. The provisions of chapter 72 of the Revised Statutes afford no adequate remedy. That the act of the wrong-doer is a crime, or that the water officials were conniving thereat, is no answer to the action. (64.)

2. PLEADING—*Vain Repetition,* may be stricken on motion. (65.)

To sustain a demurrer thereto is not prejudicial, even if error. (65.)

3. EVIDENCE—*Public Documents.* Where an appropriation of water is in question a certificate prepared in conformity with secs. 3284, 3285 of the

Revised Statutes, under the seal of the proper court, is competent evidence. (67.)

4. —— *Competency.* In an action to restrain the unlawful diversion of water, the complaint alleging combination and concerted action on the part of defendants to appropriate the waters of the district, without regard to the superior rights of plaintiffs, the defendant's control of the water commissioner, and his connivance with the unlawful acts of the other defendants, evidence of statements made by such water commissioner and his attorney, and of some of the other defendants, in explaining why the orders of the State and Division Engineers had not been obeyed, *held* not hearsay, and admissible. (68.)

The number of acres of land irrigated in the district, the annual rainfall, and the volume of water being stored by reservoirs alleged to be without decrees, *held* immaterial. (69.).

The mere enlargement by plaintiffs of the acreage cultivated, subsequent to the date of the decrees upon which they relied, no attempt being made to show the diversion of a greater volume of water than allowed by the decree, *held* properly excluded. (70.)

·Evidence for one of the defendants tending to show the impossibility of compliance with the orders of the water officials *held* admissible; but said defendant's habitual disregard and violation of such orders being shown by other evidence, its exclusion was held harmless. (68, 69.)

5. WATER RIGHTS—*Adjudication of Priorities—Decree,* in each irrigation division must, until modified in accordance with the statute, be considered as an entirety, and the waters of the division be distributed accordingly. (71.)

The general decree in a district, after the lapse of four years from its entry, concludes appropriators in other districts, though they were not parties to the proceeding. (71, 72.)

Such decree, even from the date of its entry is *prima facie* correct, and only to be assailed in a direct proceeding for the purpose. (72.)

The doctrine announced in *Fort Lyon Co. v. Arkansas Valley Co.,* 39 Colo. 332, and *O'Neill v. Northern Colorado Co.,* 56 Colo. 45, approved and re-affirmed. (72.)

*Error to Denver District Court.* Hon. HUBERT L. SHATTUCK, Judge.

Messrs. HAYT, DAWSON & WRIGHT, and Mr. G. K. HARTENSTEIN, for plaintiffs in error.

Messrs. GOUDY, TWITCHELL & BURKHARDT, Mr. H. R. KAUS, for defendants in error.

WHITE, J., delivered the opinion of the court.

Upon the petition of The Nevada Canal Company and other ditch owners of decreed water rights in Irrigation Division No. 1, the Division Engineer thereof, the State Engineer, and the Water Commissioners in Water District No. 23 of the aforesaid Irrigation Division, were enjoined and required to distribute water to the users entitled thereto, in accordance with the decrees entered and existing in Irrigation Division No. 1; and the defendant ditch owners and water users in the aforesaid Water District No. 23 were enjoined from diverting water from the natural streams in the District, otherwise than in accordance with the decrees therefor in the aforesaid Irrigation Division No. 1. They were likewise enjoined from interfering with the water officials in the distribution of the water in accordance with the decrees therein, and from using the water, as against the prior appropriations and rights of the plaintiff ditch owners; and, unless permitted so to do by the water officials, from interfering in any manner with the headgates of the ditches therein after the same had come under the control and supervision of, or been adjusted by, the aforesaid water officials, or their successors in office. The defendant ditch owners and water consumers in Water District No. 23 prosecute this writ of error, claiming that they were and are injuriously affected in their substantial rights by the proceedings and decree in the premises.

The complaint alleges substantially, that the water officials, not consenting to become plaintiffs, were, therefore, made defendants; and that defendant water users, pursuant to an agreement or understanding among themselves, obstructed and resisted, and unless restrained would continue to obstruct and resist, the water officials in the discharge of their duties in the distribution of water in accordance with the decrees existing in Irrigation District No. 1; that in defiance of the laws of the state and the decreed senior priorities of plaintiffs, the defendant water users in Water District No. 23 had for several years retained, and would con-

tinue to retain, the water of the natural streams in said District, and distribute the same therein among themselves, when it was needed and required by plaintiffs further down the streams in the said Irrigation Division No. 1, and whose rights of appropriation were senior to the rights of defendant users, to the great damage and injury of the plaintiffs; that for many years prior to, and including 1910, the Water Commissioner of Water District No. 23 aided and abetted the defendant water users in such wrongful and unlawful diversion and use of the water in said district.

The South Park Land & Live Stock Company answered separately and the other defendants jointly. The answers were, however, substantially the same. The alleged wrongful acts of the defendant water users were denied and the claim made that the priorities of the defendant users were senior in time to the decreed priorities of plaintiffs, and that the water of the natural streams in Water District No. 23 should be distributed in accordance with the decrees of that district, without regard to the decrees of priority in other water districts in the same irrigation division. It was charged that the water officials had not attempted to distribute water in accordance with the decrees mentioned in the complaint, but, on the contrary, entirely disregarded all decrees, and closed down the headgates of various ditches in Water District No. 23 in direct violation of all decrees, and of their duty in the premises as such officers; that they closed the headgates of ditches belonging to defendants, while allowing other ditches, junior in time of appropriation both to plaintiffs and defendants, to remain open and to divert and use water and permitted certain named reservoirs, that had no decreed appropriations whatsoever, to store water while the headgates of various ditches, with decreed water rights belonging to defendants, were closed by said officials.

Two affirmative defenses and a cross-complaint were interposed by each group of defendants. The cross-complaint, also denominated a fourth defense, set forth sub-

stantially the same facts alleged in the answer proper, and likewise in that portion of the pleading designated a third and further affirmative defense. A demurrer to the cross-complaint was sustained. In the second affirmative defense it was alleged that certain sections of the statutes of the state provided and afforded a plain, speedy and adequate remedy at law to the plaintiffs for the acts alleged to have been done by the defendants. A demurrer to this defense was sustained. In the third affirmative defense it was set forth that the water used by defendants under the respective ditches and priorities was applied wholly to land near the headgates of Water District No. 23 during the months of May, June and July only, and by reason thereof, and the nature of the soil, and configuration of the land, the water returned to the natural streams within Water District No. 23 above the point of diversion of the ditches owned by the plaintiffs, and that said use of water by the defendants, which had continued for thirty years without interruption, produced and would produce no injury or damage to the plaintiffs. The answer prayed that the water officials be restrained from closing the headgates of defendants in violation of their rights, and restrained from allowing water to be stored in the reservoirs having no decrees. The owners of these reservoirs were not parties to the suit. A replication was filed and trial had, resulting in findings in favor of plaintiffs, and thereupon a decree entered as aforesaid.

The contentions upon which plaintiffs in error rely for a reversal of the decree may be stated as follows: (1) The plaintiffs had a plain, speedy and adequate remedy at law, and, therefore, no cause of action was stated against the defendants, jointly or severally; (2) The court erred in sustaining the demurrer to the cross-complaint, or fourth defense, embodied in the answer: (3) The court erred to the prejudice of the defendants, plaintiffs in error, in its rulings on the admission and rejection of evidence, and the

evidence was insufficient to support the decree; (4) The decree deprives plaintiffs in error of their respective property rights without due process of law, by requiring the water of the natural streams in Water District No. 23 to be distributed in connection with, and as affected by, the decrees of all the water districts in the same irrigation division.

1. We think plaintiffs had no plain, speedy and adequate remedy at law for the acts alleged to have been done to their injury by the defendants, and there was no error in sustaining the demurrer to the answer setting forth such defense. It is true an elaborate statutory method of establishing priorities to the use, and for the distribution of water thereunder, exists in this state; and that any water commissioner who fails to perform any of the duties imposed upon him by the statutes, and likewise any persons violating the water commissioner's orders, relative to the opening or shutting down of headgates or the using of water for irrigation purposes, are severally guilty of criminal offenses. Chap. 72, Rev. Stat. 1908. However, these statutes do not afford a complete and adequate remedy for the injury and loss occasioned by taking water from the streams by a junior appropriator, when it is needed and demanded by a senior appropriator of the same stream within the same irrigation division. While the acts of a water officer in permitting the water to be so taken by a junior appropriator, and the taking by the latter against the order of the former, are crimes, for the commission of which the people may prosecute the respective violators of the law, the result, nevertheless, constitutes a special injury to the senior appropriator. Acts of such character may be enjoined by a court of equity. *People, ex rel. v. Tool,* 35 Colo. 225, 86 Pac. 224, 6 L. R. A. (N. S.) 822, 117 Am. St. 198. An injury to private property is in its nature special and peculiar and constitutes a private wrong, though the act causing the injury may also be a disturbance or obstruction to the public right. The right of

all the people to have the laws of society observed in no sense limits or curtails the right of the individual to maintain a suit in equity to restrain the threatened injury, the commission of which would certainly result in a private wrong to him by injuring or depriving him of his property rights.

2.   Every material allegation embodied in the defendants' so-called cross-complaint, or fourth affirmative defense, was contained in other portions of the answer, and the sustaining of a demurrer thereto in no wise prejudiced defendants or either of them.   Upon motion such matter might properly have been stricken upon the ground that it was only repetition of that which was already pleaded.   Plaintiffs in error concede and assert, in their belief, that they neither asked nor sought relief against the owners of the reservoirs named in their answer proper, as well as in their cross-complaint, and that the purpose of their designation therein was to disclose the manner in which the water officials neglected to obey the decrees, and that they asked only that the water officials be compelled to obey the law, and if it were necessary to close the ditches for the benefit of water users on the streams below, they should be closed in the order of priority and not otherwise.   This is exactly what the plaintiffs asked and which the decree imposed.   That decree is binding upon all the parties to the suit and the rights of each and all are measured thereby.   The fact, if it be a fact, as claimed by defendants, that the theory of the complaint is that the water officials were endeavoring to distribute the water in accordance with the law, and that the defendant water users were determined to have the water, without regard to their rights as fixed by their respective decrees of priority, and were obstructing said water officials in the discharge of their duties, when, in fact, the water officials had not endeavored to distribute the water according to law, is of little consequence.   The water officials were defendants in the suit and the court was asked to re-

quire them to distribute the water of the irrigation division in accordance with the decrees therein and the law, and that defendant water users be enjoined from interfering with such officials in the discharge of their duties in that regard. The case against the water officials was made stronger by the allegations of the answer and proof of their wilful dereliction in the premises; but this in no sense relieves the defendant water users from the wrongs which they committed, if any, in depriving plaintiffs of their right to the prior use of water. If the water officials were making unlawful orders and performing unlawful acts by distributing and permitting water to be distributed to consumers who had no rights of appropriation, or whose rights were junior to those of defendant water users, the taking of water by the defendant users, whose rights of appropriation were junior to the plaintiffs, was, nevertheless, the proximate cause of the injury to the latter. The defendant users had no legal right to water until the plaintiffs' superior rights were supplied. In such case it clearly appears that the acts of those sued caused the injury of which complaint is made, and, if such acts are continued, damages will result therefrom to plaintiffs. As said in *Lower Latham D. Co. v. Louden Irr. Canal Co.*, 27 Colo. 267, 275, 60 Pac. 629, 631, 83 Am. St. 80:

"Certain of the priorities of plaintiff are in advance of those of the defendant ditch companies. When required, it is entitled to have them supplied as against the defendant companies and all others junior in point of time. It may be that others divert water from the river, which results in depriving plaintiff of its rights, but it is not concerned in settling the relative priorities between ditch companies whose rights are junior to its own; that is a matter which they must settle between themselves. The acts of the defendant ditch companies, in supplying their priorities junior to those of plaintiff, at a time when the latter requires the water thus diverted, is an invasion of its rights. If the

former permits others to divert water to which they are entitled, or which, if not diverted, would be sufficient to supply the needs of plaintiff, that does not license them to wrong plaintiff, because others have wronged them.   In considering the joinder of defendants to an action for the wrongful diversion of water, the late Justice Elliott, after illustrating the necessity for permitting such joinder, in speaking of the rights of a prior appropriator to join as defendants those whose rights were junior, said:

" 'He may bring and maintain an action jointly against all parties junior in right to himself whenever the result of their acts, either joint or several, deprives him of his better right to the use of water, or substantially interferes therewith.   He may thus secure protection to his own priority, and leave the several junior appropriators to settle their relative priorities among themselves.' *Saint v. Guerrerio*, 17 Colo. 448, 30 Pac. 335, 31 Am. St. 320.

"The fact, therefore, that others junior in point of time to either of the parties to this action may have diverted water from the river above the mouth of the Big Thompson, which, if permitted to flow down the stream, would have supplied the needs of the plaintiff, so that the defendant ditch companies could have continued their diversion from the Big Thompson, without injury to the plaintiff, was not a defense which the defendants could interpose."

3.   We shall consider the rulings of the court on the admission and rejection of evidence, to which objections were made, and the alleged insufficiency of the evidence to support the decree, together.   There was no error in receiving in evidence plaintiffs' Exhibit "K."   It is a certificate, under seal of the proper court, of certain facts in the adjudication of plaintiffs' water rights established by the decree of such court, and was prepared under the provisions of the statute which expressly declares that it shall be *prima facie* evidence of so much of the decree as was recited

therein. §§ 3284, 3285, R. S. 1908. Certain evidence ad-
mitted upon the part of plaintiffs is said by defendants to
be hearsay and clearly prejudicial. We do not concur in this
view. This evidence was given by the Division Engineer,
the State Engineer, and an officer of the District Court serv-
ing restraining orders relative to the use of the water of
the natural streams in Irrigation Division No. 1 upon water
users in District No. 23 thereof, and related to and covered
certain statements made by the Water Commissioner of the
district and his attorney, who was also attorney for an as-
sociation of the ditch owners in that district, and certain
statements of some of the defendant ditch owners in explain-
ing why the orders of the State and Division Engineers, in
the distribution of water in the district, had not been car-
ried out. The evidence clearly supported the allegations of
the pleadings of combined and concerted action on the part
of the water users in District No. 23, and their control of
the Water Commissioners thereof, their misconception of
the effect of the decrees of that district, and their deter-
mination to use the water of the natural streams thereof
without regard to the superior rights of others in the same
irrigation division. Relative to the reception of other evi-
dence to which objection was made, it is sufficient to say,
that the admissibility of evidence for the plaintiffs, in a
cause tried without a jury, will not be considered upon ob-
jection by the defendant, where, irrespective of such evi-
dence, sufficient is found in the record to support the judg-
ment. *Selfridge et al. v. Leonard-Heffner Mac. Co.*, 51 Colo.
314, 117 Pac. 158, Ann. Cas. 1913 B, 282. The court de-
clined to permit the defendant, The South Park Land and
Live Stock Company, to show that at one time during the
summer of 1909, by a run of water from the Antero Reser-
voir, certain headgates of its ditches were washed out. We
think this evidence should not have been excluded, as it
tended to show that the headgates of the ditches to which

it related could not be shut down at that particular time in accordance with the directions of the water officials. The error in the exclusion of the evidence, however, was harmless, for it is clearly shown that at prior and subsequent times the servants and agents of that company opened the headgates of its ditches contrary to the orders of the water officials. Water Officer Kniseley testified that he knew most of the ditches of that company and had closed the headgates thereof several times, and, upon returning, found them open. Water Officer Wright told the superintendent of the defendant company that he was closing down that company's ditches, whereupon the superintendent stated that he didn't blame Wright because he was simply doing his duty, but said: "I will have to open them again. If we cannot get water now, we can't get it at any time." And thereafter the headgates of these ditches were found to be open. There was ample evidence which connected this particular defendant, as well as the other defendants, with the acts, concerted movement and alleged understanding set forth in plaintiffs' pleadings. There was no error in excluding the evidence offered relative to the number of acres of land that had been irrigated in District No. 23 for the preceding ten or more years. The acreage irrigated from year to year was wholly immaterial. No attack was made by plaintiffs upon defendants' use of water or acreage supplied. The charge was that they diverted into their ditches the water of the natural streams when the same was needed and demanded by plaintiffs whose rights of appropriation were superior and prior to theirs. Neither was the annual rain fall, nor the amount of water that was being stored by certain reservoirs, alleged to be without decrees, material as between plaintiffs and defendant water users, and excluding the proffered evidence in relation thereto was not error. *Lower Latham D. Co. v. Louden Irr. Co., supra.*

Defendants in error assert that the court refused to

allow Prof. Carpenter to testify as to what his investiga
tions showed relative to the irrigation of wild hay meadows
in high altitudes such as that in which defendants' lands
were situate, or to testify to the nature and quantity of re-
turn waters and the effect of irrigation in such localities,
if any, upon the ditches further down the streams, and
claim that they were prejudiced. We think the record does
not warrant the assertion. On the contrary, Prof. Carpenter
testified fully as to the investigations he had made relative
to the matter; and, while it is true that the court sustained
an objection to a question propounded to him as to what his
investigations had led him to find "as to the method adopted
for the irrigation of wild hay meadows in high altitudes,"
and as to the return waters from that class of irrigation,
the court permitted him to, and he did, testify fully in rela-
tion to these matters as to defendant water users' lands and
the irrigation thereof. Besides, it was shown conclusively
by the evidence that when the particular defendants were
using water it was retarded for several days, and the re-
turn to the natural streams materially reduced. In fact,
the evidence disclosed that the water so diverted and used
would not return into the natural streams for a period of
many days and approximately 25 per cent thereof would be
absorbed by vegetation, and lost by evaporation. Clearly,
under these circumstances, senior appropriators requiring
water were substantially damaged by the acts of defendants.
We do not think the court erred in declining to permit de-
fendants to show that some of the plaintiffs had, subsequent
to the date of their respective decrees, enlarged the acreage
to which they applied water, when there was no attempt to
show or claim made, that the quantity of water diverted was
greater than that to which their respective decrees entitled
them. *Fulton Irrigation Ditch Company v. Meadow Island
Irrigation Company,* 35 Colo. 588, 86 Pac. 748. The volume
of the priority awarded a ditch in adjudication proceedings

is *res adjudicata,* and the facts upon which such award is based cannot be inquired into in a collateral proceeding. *O'Brien v. King,* 41 Colo. 487, 92 Pac. 945.

No other questions, based upon the admission or rejection of evidence, are of sufficient importance and materiality to require consideration. There is in the record a fair *quantum* of admissible and proper evidence to support the conclusions of the trial court; and there is nothing to show that the court was not governed by proper rules of law. We, therefore, accept its findings of fact. *Davis v. Pursel,* 55 Colo. 287, 134 Pac. 107.

4. Plaintiffs in error contend that inasmuch as the adjudication proceedings resulting in the decrees in the different water districts comprising Irrigation Division No. 1, were separate and distinct, and they were not parties to any such proceedings except that in Water District No. 23, the water of the natural streams in the last named district should be distributed in accordance with the decrees therein without regard to priorities in the other water districts in the same irrigation division. We have frequently held, and the law in substance provides, that the decrees entered in one Irrigation Division must, until modified or changed in accordance with law, be considered as an entirety, and the water of the natural streams thereof distributed in accordance therewith, although the diversion and use of the water are made at points beyond the territorial limits of the particular Water District or County in which the decrees were entered.—*Independent D. Co. v. Agricultural D. Co.,* 22 Colo. 513, 45 Pac. 444, 55 Am. St. 149; *Lower Latham D. Co. v. Louden I. C. Co.,* 27 Colo. 267, 60 Pac. 629, 83 Am. St. 80.

We have also held, and reaffirmed the doctrine, that after the lapse of four years from the time of rendering a final decree in any water district, appropriators in different districts taking water from the same stream, are barred from an independent action by any such appropriator

against another appropriator, to determine their relative rights, although the respective appropriations sought to be readjudicated were obtained in several statutory proceedings in different districts, and such appropriators were not joined in either proceeding.—*Ft. Lyon Can. Co. v. Ark. Val. S. B. & I. L. Co.,* 39 Colo. 332, 90 Pac. 1023; *O'Neill v. North. Colo. Irr. Co.,* 56 Colo. 545, 139 Pac. 536.

This is conceded by plaintiffs in error, but they urge us to reconsider the last named cases and the holding in that regard and announce a contrary rule. The several decrees involved, when first entered, were not final, and whether they have become so by the lapse of time is of no concern herein. They are *prima facie* correct, and can only be attacked, reviewed or modified in a direct proceeding instituted for that purpose. They are not subject to collateral attack. Therefore, the rule announced and applied in those cases, of which complaint is made, has no application whatever in this case. But apart therefrom, we have no disposition to either reconsider or change the rule announced and applied in those cases. The decision in the *Ft. Lyon Canal Co. v. The Ark. Val., etc., Co. case, supra,* was rendered at the January term, 1907. It involved no public rights and has become a rule of property, and should not be disturbed.

Having carefully considered the assignments of error relied upon, and finding no prejudicial error in the record, the judgment is affirmed.

*Judgment affirmed.*

*Decision en banc.*

BAILEY, J., not participating.

Decided June 7, A. D. 1915. Rehearing denied October 4, A. D. 1915.