## No. 11,864.

SAN LUIS VALLEY IRRIGATION DISTRICT, ET AL. *v*. PRAIRIE DITCH COMPANY AND RIO GRANDE DRAINAGE DISTRICT.

Decided May 28, 1928.

Mr. GEORGE M. CORLETT, Mr. FRANK B. GOUDY, Mr. EDWARD L. WOOD, Messrs. CORLETT & NEWCOMB, for plaintiffs in error.

Messrs. STEPHENSON & MARTIN, for the Rio Grande Drainage District.

Messrs. MOSES & ELLITHORP, for the Prairie Ditch Company.

*Department One.*

MR. JUSTICE WALKER delivered the opinion of the court.

IN a statutory proceeding for the adjudication of priorities of water rights in water district No. 20, the district court decreed to the Prairie Ditch a priority for forty cubic feet per second of time, from the drainage waters running in the outlet canal of the Rio Grande Drainage District. The priority was numbered one. The waters were found by the court to be a new and independent source of supply, and the appropriation effected by the Prairie Ditch was decreed to be independent of prior appropriations out of the Rio Grande river, into which stream the outlet canal emptied. Plaintiffs in error filed objections to the claim of the Prairie Ditch for such appropriation. Their contention was that the waters running into the outlet ditch were waters which before the installation of the drainage system returned by underground flow to the Rio Grande Del Norte river, and constituted a part of the supply to which the appropriators from that river were entitled; and that, although the headgates of plaintiffs in error were above the mouth of the outlet ditch, they would be affected by the decree, because the waters involved, if allowed to flow into the river, could be used to supply priorities senior to those of plaintiffs in error having headgates below the mouth of the outlet canal. Voluminous evidence was introduced on both sides in the court below.

The principal contentions of the plaintiffs in error in this court are that the court below erred in admitting certain testimony on behalf of the defendants in error; that there is no sufficient competent testimony in the record to support the decree; and that as a matter of law the waters running in the outlet canal had, prior to the appropriation of the Prairie Ditch, become a part of the Rio Grande river supply.

The Rio Grande Drainage District, comprising about 30,000 acres in Rio Grande county, lies to the north of the Rio Grande Del Norte river, and is irrigated by the waters of that river, taken out through the canal of the Rio Grande Land & Canal Company, one of the plaintiffs

in error. The general course of the river is southeasterly from Del Norte to Alamosa. The general grade or fall of the country is to the east for several miles beyond the district, until what is called the trough of the San Luis Valley is reached. In 1917 the drainage system of the defendant in error drainage district was completed, by which the water table in the lands within the drainage district was controlled. The outlet ditch of this district runs southeasterly, but considerably more south than east, to the Rio Grande river. The waters flowing in this outlet ditch are tapped by the Prairie Ditch after leaving the drainage district, and by it used in addition to other waters for the irrigation of about 9,000 acres lying to the east of the drainage district. The waters running in the outlet ditch are incapable of being used on the lands within the district itself. The first diversion of these waters by the Prairie Ditch appears to have been made in 1917. The decree in this cause was entered in 1926. The trial court specifically found: "That the water claimed, and which the evidence shows has heretofore been taken from said outlet ditch or canal of The Rio Grande Drainage District into the Prairie Ditch and through said ditch applied upon lands lying thereunder, does not now, and never did, constitute a part of the flow of the Rio Grande Del Norte and did not reach said river through underground channels or water courses or by percolation so as to add to the flow thereof, and never was, and is not, water to which any of the hereinbefore mentioned ditches are entitled for the supply of the several appropriations claimed by said ditches or either of them."

And the court further found: "That notwithstanding the diversion of part of the water flowing out of said outlet ditch or canal of the Rio Grande Drainage District by The Prairie Ditch Company through the Prairie Ditch, a considerable part of said water is permitted to flow into the said Rio Grande Del Norte from said outlet ditch or canal, and that such water so added to the

river is in excess, perhaps greatly in excess, of any water which reached the said river by percolation from the seeped territory now embraced within 'The Rio Grande Drainage District prior to the creation of said district and excavation of its several lateral ditches and outlet ditch or canal.''

1. The testimony, of whose admission plaintiffs in error complain, is that given by Royce J. Tipton, who testified as an engineering expert on behalf of the Prairie Ditch claimants. If however, there was sufficient competent testimony to sustain the finding of the court upon the issue of fact, without considering the testimony of Tipton, the admissibility of Tipton's testimony becomes a question which need not be considered on this review. *Rogers v. Nevada Canal Co.,* 60 Colo. 59, 151 Pac. 923; *Selfridge v. Leonard-Heffner,* 51 Colo. 314, 117 Pac. 158; *Nelson v. Lunt,* 74 Colo. 265, 220 Pac. 1006; *Lewis v. Winslow,* 77 Colo. 95, 234 Pac. 1070; *McDonald v. McFerson,* 80 Colo. 4, 249 Pac. 496. And in determining this question we are not obliged to disregard certain documentary evidence which was admitted as having original probative effect, although offered in connection with Tipton's testimony. These exhibits have not been abstracted by the plaintiffs in error, and we must therefore assume that they were properly admitted, and we cannot assume that they were without probative value. *San Miguel C. G. M. Co. v. Bonner,* 33 Colo. 207, at page 213, 79 Pac. 1025, 4 C. J. 392, 393, 394. We may also add here that while the court in making its findings indicates that he considered the documentary evidence referred to, he does not affirmatively indicate that he was influenced by the testimony of Tipton, and therefore this case affords no exception to the general rule regarding the harmlessness of error in the admission of testimony when the cause is tried to the court without a jury.

As to the slope of the ground, which would probably control the flow of the underground waters, T. G. Robb, Mark Watrous an engineer, and W. W. Reilly, all wit-

nesses for plaintiffs in error, testified that the general grade was to the east, which would be away from the river. Watrous testified that there was one hundred and ten feet fall on the Prairie Ditch from the drainage district east to the railroad, a distance of several miles, and that the general fall of the ground was seven to ten feet to the mile to the east, after leaving the drainage district, five feet to the mile, and that the fall from the lowest point in the drainage district to the San Luis Lakes in the trough of the valley was seventy-five feet, and that water five feet below the surface at the northeast corner of the drainage district would be controlled by a fall to the east at an average grade of five to seven feet per mile, as against a fall to the south at an average grade of two feet to the mile. Reilly testified that the water, if not brought back, would go to the trough of the valley, that a surface ditch would take it to the trough of the valley, from whence it would strike the river near Hansen Bluff, a point below Alamosa. John E. Field, formerly state engineer, and called as a witness for plaintiffs in error, testified that in his opinion the subterranean or drainage water in the Rio Grande drainage district flows to the southeast, which would be parallel to the river. As to the topography and condition of the soil, Watrous testified that in order for the underground flow in the district to get into the river, it would presumably have to cross a ridge twenty five feet in elevation, which by other testimony was shown to exist to the south of the district and north of the river. Reilly also testified that the territory east of the district had a soil of fine texture, but that the percolation there was rapid. The witness Tipton, testifying from his personal examination of the soil, said that the soil along the south side of the district is more impervious than that immediately along the east boundary, and particularly the northeast boundary. This testimony was certainly not subject to objection. The witness Grover, for the Prairie Ditch claimants, testified that since the

construction of the drainage ditch, the water table on his land eight miles to the east near the trough of the valley, had lowered. Reilly testified that the eastern part of the valley was originally one of the best cultivated areas in the valley, then it got too wet to farm, and that the seepage began around Hooper and Mosca, which are points east of the district, and proceeded gradually west. L. G. Hathaway, witness for the claimants, testified that his land one-half mile east of the district was wet before the drainage, and is now all farmed. C. Y. Burson, witness for the claimants, testified to substantially the same conditions, showing that the seepage began east and traveled west. H. F. Stahl, witness for the claimants, testified that at times the Prairie Ditch diverts only part of the drainage water and at times all of it, that not diverted returning to the Rio Grande. Besides this evidence, which we have summarized only, there were also in evidence tables and reports prepared by the state engineer or his deputies and assistants, as well as copies of reports made by engineers in the government service. Although these exhibits are not abstracted, we find upon an examination of the exhibits themselves that they have a tendency to show that the seepage returns to the Rio Grande river from the district in question had not been diminished by the construction of the drainage district and the diversion of the waters through the Prairie Ditch from the outlet canal, and certain of these exhibits also tend to prove that the underground drainage was away from the river. We cannot agree with counsel for plaintiffs in error that the whole case of the claimants below rested upon the testimony of the engineer Tipton, and we are of the opinion that, even if his testimony should be disregarded, the findings of the trial judge are amply supported by competent evidence. Of course there was testimony conflicting with some of the testimony which we have here detailed, and from which a contrary conclusion might be reached, but this would not

authorize us to interfere with the finding of the trial judge.

2. It is argued on behalf of the plaintiffs in error that, since the waters flowing in the outlet canal were not actually diverted by the Prairie Ditch until about two years after the completion of the canal, the discharge of the canal had become a part of the Rio Grande river flow, and the appropriation by the Prairie Ditch must be subordinate to other appropriations from the river. But even if this were true, plaintiffs in error have no right to complain of the diversion by the Prairie Ditch, because the priorities of plaintiffs in error antedated the construction of the outlet canal, and the waters flowing therein could never have constituted a source of supply for plaintiffs in error, unless they had reached the river through the underground flow, and upon this the trial court found against the plaintiffs in error. We perceive no reason for disturbing the decree entered in this case, and accordingly it is affirmed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE BURKE, and MR. JUSTICE WHITFORD concurring.