No. 15,832.

CORYELL v. ROBINSON, WATER COMMISSIONER, ET AL.
(194 P. [2d] 342)

Decided June 24, 1948.

Mr. C. E. BLAINE, Mr. HARRY W. GUENO, for plaintiff in error.

Messrs. STEWART & BROWN, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case arose when plaintiff in error, who was plaintiff in the trial court, sought a temporary injunction restraining the water commissioner of Irrigation District No. 40, Delta county, or any of the other defendants named in the action, from interfering with his right to waste and seepage water collected and used through his irrigation ditches in McKinnon Draw, south of Grand Mesa and north of the Gunnison river, into which stream the whole area of Water District No. 40 drains, and judgment quieting his title to said waters for irrigation. The trial court denied the application of plaintiff for temporary injunction. Subsequently, the defendant water commissioner sought a permanent injunction against plaintiff, forbidding him to divert water

through his Coryell Ditches Nos. 1, 2 and 3 from Mc-Kinnon Draw to his nearby land. The trial court first granted an order for temporary injunction and subsequently, after an extended trial, made the injunction permanent. Plaintiff is here seeking a reversal of the judgment.

Plaintiff acquired his first tract of land (160 acres) in McKinnon Draw March 16, 1909. Included in his deed were fourteen shares of capital stock of Leon Lake Ditch and Reservoir Company and five-eighths of the waste water from the remaining lands of his grantor, and under the deed he was permitted to construct ditches on remaining lands of McKinnon in order to collect and use the waste water. He constructed the three ditches which are the subject matter of this suit—which admittedly had no headgates—one each in the years 1910, 1911, and 1912. The intakes, and most of the ditch construction, were on land not owned by him and above his in elevation. The modest amount of water which plaintiff obtained by virtue of his ownership of fourteen shares of Leon Lake Ditch and Reservoir Company stock, which was transmitted to him through the Cedar Mesa ditch, is not in dispute. This water, diverted from the Cedar Mesa ditch above him, was admittedly insufficient to irrigate his lands. His diversion of the seepage from the Cedar Mesa ditch at the head of McKinnon Draw was complete, and no water reached the lands of defendant appropriators on the drainage area below McKinnon Draw, except on the occasions when the water commissioner cut the banks of plaintiff's ditches. The waters which came into the Cedar Mesa ditch and were used by the landowners on the mesa were those impounded in reservoirs built on Grand Mesa and also included the flood waters from Surface Creek, both sources of which are in a different drainage area from that which supplies defendants' ditches with their irrigation waters.

These seepage waters flowing into the three Coryell ditches seem to have developed after the construction of

the Cedar Mesa ditch, bordering the edge of Cedar Mesa. The distance from the headgate of the Cedar Mesa ditch, where water is diverted from Surface Creek—and then following the course of the Cedar Mesa ditch—to where it crosses McKinnon Draw, is approximately eight miles. Defendants in this case own properties that are in the same natural drainage basin as are the waters in McKinnon Draw—all of the landowners being below McKinnon Draw—and the waters in that basin eventually flow from Poison Gulch into what formerly was known as Fruitgrowers' Reservoir, and thence follow down Alfalfa Run, and, after passing near Austin, empty, south of that town, into the Gunnison river. The waters of Surface Creek not diverted by the Cedar Mesa ditch follow down a drainage basin just west of the town of Eckert and, after joining the waters of Forked Tongue Creek, empty into the Gunnison river at a point some three or four miles below the point where the waters of Alfalfa Run join those of the Gunnison. Thus the seepage waters from the Cedar Mesa ditch, which plaintiff appropriated by and through his three Coryell ditches, are still part of the Gunnison watershed in Water District No. 40. By their diversion through the Cedar Mesa ditch they reach the Gunnison river some four miles further upstream than they otherwise would if allowed to continue their natural course.

At the time the trial court denied the temporary injunction sought by plaintiff, it made the following findings:

"That the seepage and percolating waters arising in McKinnon Gulch north of and above plaintiff's ditches would eventually reach Poison Gulch and Alfalfa Run, natural streams tributary to the Gunnison River, if not intercepted by the plaintiff, and that McKinnon Gulch is a tributary to said streams.

"Further, that in 1930 in a General Water Adjudication in Water District No. 40, the plaintiff obtained and received Priority No. G-72 awarding a total of .75 of a

cubic foot of water per second of time to the Coryell Ditches Nos. 1, 2 and 3, located at the points of diversion described in the complaint and that each and all of the above named defendants are the owners of prior and senior decrees from the streams to which the said McKinnon Gulch is a tributary and that said defendants, and each of them, are entitled to recognition of their decrees prior to plaintiff's decree.

"The Court further finds that the plaintiff from time to time carries reservoir water from the Cedar Mesa Ditch into McKinnon Gulch above his ditches; that the Water Commissioner in the past has made formal demand to the plaintiff to install suitable headgates and measuring weirs, which demand has been renewed from time to time, but the plaintiff has failed and refused to install the same in conformity with the requirements of the Statute, as requested by said Water Commissioner.

"The Court further finds that the plaintiff has not established to the satisfaction of this Court that he has acquired a prescriptive right in the waters involved in this proceeding and that his right to said waters has been heretofore adjudicated in the General Water Adjudication of 1930 and that said award and decree has not been appealed from within the time allowed by law, or otherwise set aside.

"Further, that said plaintiff has failed to establish any other or additional right to the waters in McKinnon Gulch under and by virtue of the seven-year Statute and payment of taxes.

"Further, that the defendant, R. E. Robinson, Water Commissioner in Water District No. 40, has at all times mentioned in this proceeding properly performed the duties of his office and that upon demand being made by the defendant senior appropriators, it was and is his duty to distribute the waters in said Gulch in conformity with the priorities of the parties."

The judgment and decree for a permanent injunc-

tion in favor of the Water Commissioner included the following findings:

"That McKinnon Draw, running through the plaintiff's ranch, is a shallow, narrow swale at that point and at the points where the Coryell ditches in question are taken out, and is in no sense a natural stream; that the water which the plaintiff claims rises from seep and waste water on lands above his; that the source of said water is Surface Creek and other waters, none of which are in the natural drainage of McKinnon Gulch, but are brought in by artificial means.

"That Mr. Coryell took these ditches out about the years 1909 and 1910 and has intercepted all water above his headgates in said gulch from these sources ever since they arose there, and said water has never been permitted to flow down the gulch to other users below, and has never formed the basis or any part thereof, for the adjudications of any of the defendants nor of anyone else.

"The water involved herein and the lands of the plaintiff are all situated in Water District No. 40 in Delta County, Colorado. In a general adjudication in said district, which culminated in a decree entered in the year 1930, the plaintiff filed his claim for a priority covering the water rights involved in this proceeding. It does not appear from the record whether he claimed an independent priority in that proceeding or not; that is, a priority independent of other priorities in that district on the theory that this was waste and seepage water, which he had always used ever since it originated and that it formed no part of priorities already adjudicated. It does appear, however, that he was given priority No. G-72 as of the date of the decree which, by its terms, is made subject to the decrees of the defendants. The nature and type of the decree to which he was entitled was a proper subject for adjudication in that decree, and if there was any error in that decree in that respect, the only way it could have been corrected was by an appeal to the

Supreme Court. No such proceeding was taken, and consequently that decree must be taken as defining the plaintiff's rights. It is res adjudicata and cannot be collaterally attacked or ignored, but the plaintiff is bound thereby.

"On the issue of obtaining the right by prescription, there is nothing in the evidence which would justify a conclusion that the defendants or any of them knew of plaintiff's diversion and taking of this water prior to the year 1934, and that is one of the necessary elements of title by prescription and since the period provided for in the statute of limitations has not run since the year 1934, the plaintiff can claim no right under that statute."

To the evidence already set out in the trial court's findings and judgment, there should be added the fact that the then water commissioner, Luellen, in 1934, a dry year, cut the banks of the Coryell ditches for the purpose of releasing the water they were diverting to the water users lower down on the basin. This seems to have been repeated in 1935. In 1943 and 1945 the present water commissioner, Robinson, or his deputy, similarly released the Coryell seepage water, his action in 1945 being the cause of this litigation.

It is evident from the trial court's findings and judgments that the plaintiff there relied, as he does in this court, upon two main points:

(1) The contention, that plaintiff acquired a prior right to the use of the water through the three Coryell ditches by right of prescription through adverse use, is based on the premise that the filing by plaintiff of his claim for the use of the water in the three ditches, in the water adjudication of 1930, and the awarding to him of a right junior to the appropriators below him on the drainage basin had no effect in tolling any period of prescription that might be running in his favor. The trial court found that adverse user had not been proven. Even if it had, and assuming, without deciding, that adverse use could have been asserted in this case, we are

of the opinion that no prescriptive period could run after plaintiff, having filed his claim and been awarded a priority junior to the other appropriators, failed to appeal therefrom and allowed this award to become final. Thenceforward he became *of record* an appropriator junior to all of the defendants. His use of the water, even had it been adverse previously, ceased to be so in 1930, for the senior appropriators had a right to assume that any water he thereafter diverted was under the administration of the water commissioner and was water allowed him after their decrees had been satisfied. When it was discovered in 1934 that this assumption was not correct, there began the steps taken by defendants and the water commissioner outlined above to correct the situation.

 (2) The contention argued at greatest length is that plaintiff's right to the use of the water collected by the Coryell ditches is based upon an independent appropriation of extraneous water from a foreign watershed, and that therefore he is not concerned with the priorities on the water flowing in the drainage basin of McKinnon Draw, Poison Gulch and Alfalfa Run, in which defendants are located. His contention is that when defendants made their filings and appropriations there was no water in McKinnon Draw, and that when springs began to form therein, shortly after the Cedar Mesa had been irrigated with the foreign water transported in Cedar Mesa ditch from Surface Creek, he was entitled to appropriate these waters as his own. It is argued that *San Luis Valley Irr. Dist. v. Prairie Ditch Co.*, 84 Colo. 99, 268 Pac. 533, and *Ironstone Ditch Co. v. Ashenfelter*, 57 Colo. 31, 140 Pac. 177, support this contention.

We do not believe either of these authorities is controlling. In the first case the successful litigants had constructed a canal through a ridge and thereby conducted seepage water, which all of the engineers testified would otherwise never have flowed into the Rio

Grande river, back into the Rio Grande drainage area. They were awarded an appropriation independent of those on the Rio Grande. If plaintiff in the instant case had collected seepage water from the Surface Creek area and then constructed the Cedar Mesa ditch to convey it to his land in McKinnon Draw, there would be a more nearly analogous situation. The defendants below McKinnon Draw would then not be in a favorable position to claim this seepage water.

██ Counsel for plaintiff quote the following excerpt from *Ironstone Ditch Co. v. Ashenfelter, supra:* "It must not be forgotten that No. 3 consumers constructed at their own labor and expense the Feeder ditch by which the seepage water around the rim of Ash Mesa, doing no one any good, was conveyed a mile up the river and emptied in the stream just above their headgate. *This was an independent appropriation from extraneous sources, which they could make under the seepage act of 1889, section 3177, R. S. 1908, and was not included in, covered or controlled by the general adjudication decree.* If by their efforts they lawfully contributed water to the stream which otherwise would not have reached it above their headgate, it was theirs, independent of the original adjudication decree, and because by their labor they contributed extraneous water to the normal flow, is no reason why they may not sell their priorities and irrigate their land with the independent water." Counsel have italicized the second sentence of that paragraph. We would italicize the third and concluding sentence of that quotation as pointing an essential distinction between the facts in the *San Luis Valley Irr. Dist. v. Prairie Ditch Co., supra,* and *Ironstone Ditch Co. v. Ashenfelter, supra,* on the one hand and the instant case on the other. In both of the cases upon which plaintiff's counsel rely, the successful litigants had, *by their own efforts, lawfully contributed water to the stream or stream basin which otherwise would not have reached it. In both cases by their labor*

*they contributed extraneous water to the normal flow or to the drainage areas of the stream.* In the instant case, plaintiff *has not by his labor or efforts contributed extraneous water to the normal flow of the watershed* of McKinnon Draw, Poison Gulch and Alfalfa Run. It is not he who has brought the waters of Surface Creek over into McKinnon Draw watershed. He merely appropriated the water he already found available to him in McKinnon Draw. That water would appear to belong to the watershed, to be distributed with other waters in the watershed according to the decreed priorities. We have held in an early case that the fact that a spring has increased in flow as a result of irrigation on higher lands does not alter its status. *Clark v. Ashley,* 34 Colo. 285, 82 Pac. 588. We shortly thereafter held that the 1889 statute, relative to independent appropriation of waste, seepage and spring waters, was applicable only to appropriations of such waters before they reached the channel or bed of a natural stream, whether by natural surface flow, by percolation or by artificially being turned into the same. *LaJara Creamery & Livestock Ass'n v. Hansen,* 35 Colo. 105, 83 Pac. 644. These principles we have applied most recently in *DeHaas v. Benesch,* 116 Colo. 344, 351, 181 P. (2d) 453, where we said: "Whatever may be the right of the owner of the lands upon which seepage or spring waters first arise, as against a prior appropriator where such waters are not tributary to a stream, the law is well settled that waters which are tributary to a stream belong to the stream and are subject to appropriation for beneficial use the same as other waters of the stream. *Nevius v. Smith,* 86 Colo. 178, 279 Pac. 44; *Faden v. Hubbell,* 93 Colo. 358, 28 P. (2d) 247."

Great stress is laid by plaintiff on the fact that there was no water in McKinnon Gulch at the time the defendant appropriators made their filings. For the reasons already given that fact alone would not be controlling. It should be added, however, that water was flow-

ing in the Coryell ditches in 1914 at a time when, in an adjudication, seven of the defendants were awarded priorities. There also was water flowing in the Coryell ditches at the time of the 1920 adjudication, when two defendants were awarded their priorities. In 1926, as already set forth, plaintiff first made his filing of claims for the three Coryell ditches, and in the 1930 adjudication he was awarded a priority junior to those of all of the defendants. No appeal having been taken from this judgment, we agree with the trial court that the matter is now res judicata.

We also are of the opinion that the trial court ruled correctly in its finding holding that, "said plaintiff has failed to establish any other or additional right to the waters in McKinnon Gulch under and by virtue of the seven-year statute and payment of taxes."

The judgment is affirmed.