(October 5, 1915.)

STATE, Appellant, v. S. F. HORN, JOHN EILER and JOHN CALVIN, Respondents.

[152 Pac. 275.]

CONSTITUTIONALITY OF SEC. 6872, REV. CODES, AFFIRMED—EXERCISE OF POLICE POWER OF STATE ON PUBLIC DOMAIN WITHIN STATE— REGULATION OF SHEEP AND CATTLE INDUSTRIES—LEGISLATIVE PREROGATIVE TO EXERCISE POLICE POWER OF STATE.

1. The owners of sheep, equally with all other citizens of the state, are entitled to the use of the public domain within the jurisdiction of the state, subject to the right of the state in the exercise of its police power to control and regulate such use.

2. The control and regulation of the various industries of the state under a proper exercise of the police power rests with the legislative department of the state government, and it is only against a palpable abuse of the power that the courts may interpose. If, in the judgment of the legislature, and in order to protect the public health, public morals or public safety, or to enhance the general prosperity of the citizens, any particular industry requires protection or regulation upon the public domain within the state, such protection or regulation may be afforded by a proper legislative enactment.

3. It is within the constitutional prerogative of the legislature, in the exercise of the police power of the state, to minimize the opportunities for conflict between the sheep and cattle industries, to the extent of prohibiting sheep from running "on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle grower, either as a spring, summer or winter range for his cattle," as provided in sec. 6872, Rev. Codes.

4. The lands constituting the public domain of the United States within the jurisdiction of this state are subject to the police

regulations of the state, as expressed in legislative enactments, the same as the lands of any citizen of the state, so far as such laws and regulations are not in conflict with the federal constitution or statutes; and until Congress provides by law that sheep shall not be restricted by state laws from grazing anywhere upon the public domain, the state, by proper legislation, may regulate and control that matter.

5. Individuals engaged in the sheep industry are not entitled to claim that the same legislative restrictions and privileges be applied to that industry as to rival industries, such as the horse or cattle industry. The habits and nature of these animals being different, as well as the results which follow from their use of land for grazing purposes, it is competent for the legislature to take these differences into consideration and to provide for them by regulations designed to meet existing conditions in each particular industry. When the law under consideration treats all individuals of the class of sheep-men alike under similar circumstances and conditions, both as regards the privileges conferred and the liabilities imposed, it is not class or special legislation, and is not obnoxious to the provisions of sec. 1, art. 1 of the state constitution which enumerates, among the inalienable rights of the citizen, the "acquiring, possession and protecting property."

6. The equality clause of the federal constitution, as embodied in the 14th amendment, is not necessarily infringed by legislative classification of persons or things. This clause only requires that the same means and methods be applied impartially to all the constituents of a class, so that the law may operate equally and uniformly upon all persons in similar circumstances.

APPEAL from the District Court of the Sixth Judicial District for Custer County. Honorable J. M. Stevens, Judge.

Criminal prosecution for herding and grazing sheep on cattle range in violation of sec. 6872, Rev. Codes. Judgment for defendant. *Reversed.*

J. H. Peterson, Atty. Genl., T. C. Coffin, J. J. Guheen and E. G. Davis, Assts., A. J. Higgins and W. W. Adamson, for Appellant.

"It is a part of the public history of this state that the industry of raising cattle has been largely destroyed by the encroachments of innumerable bands of sheep. Cattle will

not graze, and will not thrive, upon lands where sheep are grazed to any great extent." (*Sweet v. Ballentyne,* 8 Ida. 431, 437, 69 Pac. 995.)

In the exercise of its police power a state may absolutely or unconditionally restrain any and all livestock from running at large, and this without any reasons or grounds other than that of expediency, as determined by the legislative will. (*Kimmish v. Ball,* 129 U. S. 217, 9 Sup. Ct. 277, 32 L. ed. 695; 1 Tiedeman on State and Federal Control of Persons and Property, p. 838.)

The keeping of livestock is under the police regulations of the state, and such police regulations extend over the public lands of the United States within the state. (*Spencer v. Morgan,* 10 Ida. 542, 79 Pac. 459; *Swanson v. Groat,* 12 Ida. 148, 85 Pac. 384; *Risse v. Collins,* 12 Ida. 689, 87 Pac. 1006.)

As to sec. 6872 being class or special legislation, if all persons subject to it are treated alike under similar circumstances and conditions in respect to both privileges conferred and liabilities imposed, it is not special. (*Missouri Pac. R. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. ed. 107.)

J. M. Stevens and C. R. Clute, for Respondents.

The common law of England that every man must restrain his own stock is not applicable to the sparsely settled portions of the west. (*Buford v. Houtz,* 133 U. S. 320, 10 Sup. Ct. 305, 33 L. ed. 618.)

"If a statute purporting to have been enacted to protect the public health, public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution." (*Ex parte Whitwell,* 98 Cal. 73, 35 Am. St. 152, 32 Pac. 870, 19 L. R. A. 727; *Smiley v. McDonald,* 42 Neb. 5, 47 Am. St. 684, 60 N. W. 355, 27 L. R. A. 540; *In re Hong Wa,* 82 Fed. 623; *Frorer v. People,* 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492; *Sutton v. State,* 96 Tenn. 696, 36 S. W. 697, 33 L. R. A. 589; *State v. Walsh,* 136 Mo. 400,

37 S. W. 1112, 35 L. R. A. 231; *State v. Speyer*, 67 Vt. 502, 48 Am. St. 832, 32 Atl. 476, 29 L. R. A. 573; *New Orleans Gas-light Co. v. Louisiana Light etc. Mfg. Co.*, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. ed. 516; *Lawton v. Steele*, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. ed. 385.)

The mere fact of classification is not sufficient to relieve ·a statute from the reach of the equality clause of the four-teenth amendment, and in all cases it must appear, not only that the classification has been made, but also that it is one based upon some reasonable ground, some difference which bears a just and proper relation to the attempted classifica-tion, and is not a mere arbitrary selection. (*Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. ed. 679; Cooley on Const. Lim., pp. 556–575; *Wagner v. Milwaukee County*, 112 Wis. 601, 88 N. W. 577; *Nichols v. Walter*, 37 Minn. 264, 33 N. W. 800; *Murray v. Board of Commrs.*, 81 Minn. 359, 83 Am. St. 379, 84 N. W. 103, 51 L. R. A. 828; *People v. Gillson*, 109 N. Y. 389, 4 Am St. 465, 17 N. E. 343; *Gulf C. & S. F. Ry. Co. v.·Ellis*, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666.)

BUDGE, J.—The defendants in this case were informed against in the justice court of Challis precinct, Custer county, and charged with herding and grazing about 2,000 sheep on a cattle range previously occupied as a spring and fall range belonging to divers persons; such persons, by the usual and customary use of such range as a cattle range, having pos-sessory right thereto as against sheep.

This action was prosecuted under sec. 6872, Rev. Codes, which provides that ''Any person owning or having charge of sheep, who herds, grazes, or pastures the same, or permits or suffers the same to be herded, grazed or pastured, on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle-grower, either as a spring, summer or winter range for his cattle, is guilty of a misde-meanor; but the priority of possessory right between cattle and sheep owners to any range, is determined by the priority in the usual and customary use of such range, either as a cattle or sheep range.''

The defendants were tried before a jury in the justice court and found guilty, and sentenced to pay a fine. From such conviction and judgment they appealed to the district court of the sixth judicial district. In due time said cause came on regularly for trial before the court and jury.

At the conclusion of the evidence offered on behalf of the state, the following motion was interposed by the attorneys for the defendants:

"We move that a peremptory instruction be given to the jury to discharge the defendants or to return a verdict of not guilty and that the defendants be discharged, for the reasons given in our first objection to any testimony being given in this case whatever, namely:

"That the complaint does not state facts sufficient to constitute a criminal offense against the laws of the state of Idaho.

"That the section of the statute upon which this prosecution is attempted is unconstitutional as an improper attempt by the legislature to control or give preference rights in and to portions of the public domain of the United States within the jurisdiction of this state.

"That it is class legislation and that the legislature has no power or control over the public domain, as the jurisdiction and control of the same rests entirely within the Congress of the United States, and this action is not prosecuted under any law of the United States."

The trial court granted said motion, and dismissed the jury, rendering a final judgment against the state; to which ruling and judgment of the court the state duly excepted. This is an appeal from the order and judgment so made and entered by the district court.

In passing we might suggest that the trial court undoubtedly inadvertently overlooked sec. 7877, Rev. Codes, when the motion was entertained to instruct the jury to discharge the defendants or to return a verdict of not guilty, and in excusing the jury from the further consideration of the cause and discharging the defendants. Said sec. 7877, Rev. Codes, provides: "If, at any time after the evidence on either side

is closed, the court deems it insufficient to warrant a conviction, it must advise the jury to acquit the defendant. But the jury are not bound by the advice." However, at the suggestion of counsel for the state, we will ignore this error and proceed to a determination of this case as though no such error had occurred.

The range in question is a strip of public domain about three and one-half miles wide by five miles long, located in Pahsimaroi valley, and is bordered on one side by a chain of farms owned by cattle-men and farmers, and on the other side by the Lemhi Forest Reserve. It appears from the evidence in this case that the farmers and ranchers range their cattle within the boundary lines of said range during the spring and fall, prior to ranging them upon the Lemhi Forest Reserve, and again in the fall, when the cattle are driven from the forest reserve by reason of storms and prior to the time when the cattle are fed in the early winter or late fall.

It was conceded upon the oral argument of this case that if sec. 6872, Rev. Codes, *supra,* is constitutional, the complaint is sufficient.

Counsel for respondent insist that this section is unconstitutional for the following reasons: First, that it is in direct contravention of sec. 1, art. 1 of the constitution of Idaho; second, that it is an encroachment upon the powers of the general government in that it attempts to give the state control over the public domain and the natural products thereof; third, it is not a proper police regulation, in that it has no real or substantial relation to the public health, public morals or public safety; it arbitrarily interferes with a private business, and imposes unusual and unnecessary restrictions upon a lawful business; fourth, it is in direct violation of the fourteenth amendment of the constitution of the United States, in that it is class legislation of the most vicious character, denying to the respondent equality of rights.

We are unable to reach the conclusion that the section of the statutes under consideration is in contravention of sec. 1, art. 1, of the constitution, which provides that "All men are by nature free and equal, and have certain inalien-

able rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety." The effect of said sec. 6872, Rev. Codes, respondents contend, is to deprive them of the right to acquire, possess or protect their property. But we fail to see how such a construction could be placed upon this section. They surely would not be deprived of this right by reason of being prohibited from herding, grazing or pasturing, or permitting or suffering their sheep to be herded, grazed or pastured upon the public domain previously occupied by cattle, or upon any range usually occupied by any cattle-grower, either as a spring, summer or winter range for his cattle.

The public domain is not the property of the respondents, but of the United States. The respondents have an equal right with all other citizens of the state to the use of this public domain within the jurisdiction of the state, subject to the right of the state to control and regulate such use. The state has an interest in the enjoyment of the right to the use of the public domain that is paramount to that of its citizens and may, in the exercise of its police power, for the general well-being and to promote the public health, the public morals or the public safety, regulate and control the use of the public domain within the confines of the state; which control and regulation rests with the legislative department, and it is only against the abuse of this power that the courts may interpose.

If, in the wisdom of the legislature, and in order to protect the public health, the public morals or the public safety, or to enhance the general prosperity of the citizens, any particular industry requires protection or regulation upon the public domain within the state, such protection or regulation may be afforded by proper legislative enactment. (*Bacon v. Walker,* 204 U. S. 311, 27 Sup. Ct. 289, 51 L. ed. 499.)

As we deem the third question raised by counsel for respondents—the constitutionality of sec. 6872, Rev. Codes,

as a police regulation—to be closely related to the question just disposed of, we will consider it next in order.

The right of the state, under its police power, to regulate the running at large of livestock has been so frequently determined by this court, that it would be a useless repetition to reiterate the principles of law expressed in the various decisions upon that subject. They will be found in the cases of *Sifers v. Johnson,* 7 Ida. 798, 97 Am. St. 271, 65 Pac. 709, 54 L. R. A. 785; *Sweet v. Ballentyne,* 8 Ida. 431, 69 Pac. 995; *Spencer v. Morgan,* 10 Ida. 542, 79 Pac. 459, and cases therein cited. And if it is within the police power of the state to regulate the running at large of livestock, and to prohibit certain animals from running at large, such, for instance, as hogs, or other animals which, from their nature or condition, might be deemed to be injurious or detrimental to the stock industry, it would of necessity lie within that power to restrict the herding or grazing of sheep upon the public domain within certain months of the year, or to absolutely prohibit the herding or grazing of sheep upon any part or portion of the public domain within the limits of the state.

In the case of *Sifers v. Johnson, supra,* this court said: "The police power of the state is very great. Under it many things may be done which at first glance seem to infringe upon natural and civil rights. The protection of health, prevention and suppression of nuisances, controlling the conduct of business which affects others not engaged in the same, the preservation of the public peace and protection of the public welfare are legitimate subjects calling for the exercise of the police power of the state."

Judge Cooley, in his work upon Constitutional Limitations, sixth edition, at page 743, says: "The most proper business may be regulated to prevent its becoming offensive to the public sense of decency, or for any other reason injurious or dangerous."

In his work upon State and Federal Control of Persons and Property, Mr. Tiedeman, at page 838, says: "In every state the keeping of livestock is under police regulation. . . . . The clash of interest between stock-raising and farming calls

for the interference of the state by the institution of police regulations; and whether the regulations shall subordinate the stock-raising interest to that of farming, or *vice versa,* in the case of an irreconcilable difference, as is the case with respect to the going at large of cattle, is a matter for the legislative discretion, and is not a judicial question. In the exercise of this general power of control over the keeping of livestock, the state . . . . may prohibit altogether the running at large of such animals, and compel the owners to keep them within their own inclosures.''

In the case of *Chicago, B. & Q. R. R. Co. v. Illinois,* 200 U. S. 561, 26 Sup. Ct. 341, 50 L. ed. 596, 4 Ann. Cas. 1117, we find the following statement: ''We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity as well as regulations designed to promote the public health, the public morals, or the public safety. . . . . And the validity of a police regulation, whether established directly by the state or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable, and whether really designed to accomplish a legitimate public purpose.''

The clash between the sheep industry and the cattle industry, and between the sheep and farming industry, is a part of the history of this state; and the enforcement of certain police regulations has resulted in minimizing a conflict that was detrimental in the extreme to all three of these legitimate and necessary industries. The differences between these industries, while minimized, still exist in many portions of the state. This unfortunate condition is not one that has existed only during the settlement of this country, but was regulated and controlled under the common law of England, where the clash was between the sheep men and the tiller of the soil.

During the reign of Henry the VIII, in the sixteenth century (Froude's History of England), there was a sharp conflict between the sheep industry and the farmer that resulted

in more drastic legislation than has been enacted by the legislature of this state upon that question. By reason of the absence of, or failure to enforce, proper police regulations looking to the control of the public domain at the time referred to, it became almost impossible for the farming communities to maintain themselves, due to the rapid growth of the sheep and cattle industries. Farms were forsaken, and the entire country depopulated as a result of the unlimited number of sheep which were owned by a few, comparatively speaking, of the people residing in the British Isles. It became necessary for the sheep owners, in order to properly provide range for their vast herds, to acquire all of the lands that could be obtained and to monopolize the public domain for the purpose of securing feed for their flocks. Conditions became so bad that an act was passed by parliament, wherein it was provided:

"Whereas, divers and sundry persons of the king's subjects of this Realm, to whom God of his goodness hath disposed great plenty and abundance of movable substance, now of late, within few years, have daily studied, practiced, and invented ways and means how they might accumulate and gather together into few hands, as well great multitude of farms as great plenty of cattle, and in especial, sheep, putting such lands as they can get to pasture and not to tillage; whereby they . . . . keep in their hands such great portions and parts of the lands of this Realm from the occupying of the poor husbandmen and so to use it in pasture and not in tillage, is the great profit that cometh of sheep . . . . it is hereby enacted, that no person shall have or keep on lands not their own inheritance more than 2,000 sheep. . . . . "

This act was considered as a necessary police regulation and enacted for the purpose of protecting the farmers against an industry that in and of itself was legitimate and had become an integral part of the development of the country and entitled to legitimate encouragement. But as in that day, so in this, it has become necessary to subordinate one of two industries to avoid a condition that the legislature in its

wisdom has said might be seriously detrimental to the welfare of the people.

It has been held by this court repeatedly that it is within the discretion of the legislature to subordinate the sheep industry to that of farming or *vice versa.* The legislature of this state, in what is commonly known as the ''Two Mile Limit Law,'' has declared that the sheep industry shall be subordinate to that of farming. If this should work a hardship to that industry, it is in the legislature and not the courts that relief must be sought. This court has said that the legislature in subordinating the sheep industry to that of farming did so for the express purpose of protecting the peace, quiet and comfort of the small farmers of the state. (*Sweet v. Ballentyne,* 8 Ida. 431, 69 Pac. 995.)

And by analogy, it would seem that if it is within the power of the legislature as a police regulation to subordinate the sheep industry to that of farming, it must also be within the power of that body to subordinate the sheep industry to the cattle industry to the extent of prohibiting sheep from running ''on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle grower, either as a spring, summer or winter range for his cattle.''

We will now consider the second proposition of respondents, viz., that the legislature of the state by this act is encroaching upon the powers of the general government by exercising control over the public domain and the natural products thereof.

In the case of *Sweet* v. *Ballentyne,* 8 Ida. 431, 69 Pac. 995, (on rehearing, 8 Ida. 451, 69 Pac. 1000), this court held that ''So far as the public domain of the United States, in this state, is concerned, it is under the police regulations of the state, and governed thereby, the same as the lands of the citizen, wherein such laws or regulations are not in conflict with the federal constitution, or the laws of Congress, and, until Congress provides by law that sheep shall not be restricted by state laws from grazing everywhere upon the public domain, the state, by proper legislation, may regulate and control that matter.''

In support of their contention, counsel for respondents direct our attention to an act of Congress of February 25, 1885 (23 Stat. at L. 321, U. S. Comp. Stats. 1913, sec. 4997, 6 Fed. St. Ann., p. 533), prohibiting the unlawful occupancy of public lands. That act, however, is not in conflict with the opinions of this court in the cases of *Sifers v. Johnson, Sweet v. Ballentyne* and *Spencer v. Morgan, supra,* and has no application to the case at bar.

That act was passed for the purpose of prohibiting the unlawful fencing of the public domain of the United States, and was directed against persons and corporations who, at the time of its passage, had fenced and were engaged in the fencing of large areas of the public domain by inclosing the same with barb-wire, and thereby preventing the use of the public domain by the citizens of the United States as a whole; and retarding the settlement of the public domain by individual citizens who sought to permanently establish their homes thereon. The object that Congress had in view was to prohibit the monopoly by a few individuals of the public domain of the United States which, as before stated, is not in conflict with the statutes of this state or the decisions of this court, but is strictly in accord with the policy pursued by our legislature in regulating the right to the use of the public domain by the sheep, cattle and farming industries.

In their fourth contention counsel for respondents maintain that sec. 6872, Rev. Codes, is in direct violation of the fourteenth amendment to the United States constitution, in that it is class legislation, denying to the respondents equality of rights. We are unable to see any merit in this contention.

It is well settled that a law is not special in character "if all persons subject to it are treated alike, under similar circumstances and conditions, in respect both of the privileges conferred and liabilities imposed." (*Missouri Pac. R. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. ed. 107.) In the case of *Sweet v. Ballentyne, supra,* at page 448, it was said: "It cannot be seriously contended that said law [two mile limit law] is class legislation because it does not include

cattle and horses, as well as sheep, as the habits and nature of the animals, their effects on the land on which they graze, are not the same. However, the law under consideration treats all sheep-men alike, under similar circumstances and conditions, in respect both of the privileges conferred and the liabilities imposed, and is, for that reason, not class legislation—no more than the law not requiring one to fence against hogs is class legislation against the hog-grower; nor does that deny him equal protection under the law. The statute in question affords the same protection to the sheep-raiser as it does to other citizens. . . . . That statute is general in its terms, and affords protection for all and to all alike.''

The equality clause of the federal constitution is not necessarily infringed by special legislation or by legislative classification of persons or things. This clause only requires that the same means and methods be applied impartially to all the constituents of a class so that the law may operate equally and uniformly upon all persons in similar circumstances. It merely requires that all persons subject to such legislation shall be treated alike under like circumstances and conditions. (*Central Lumber Co. v. South Dakota,* 226 U. S. 157, 33 Sup. Ct. 66, 57 L. ed. 164; *State v. Leavitt,* 105 Me. 76, 72 Atl. 875, 26 L. R. A., N. S., 799.) It is a rule that a statute relating to persons or things as a class is a general law, but that one relating to particular persons or things of a class is special. (*State v. Walsh,* 136 Mo. 400, 37 S. W. 1112, 35 L. R. A. 231.)

We are of the opinion that the statute under consideration is not an arbitrary discrimination between sheep and other classes of stock, or that it is class or special legislation, because it embraces all classes subject to such legislation under like circumstances and conditions.

Sec. 6872, Rev. Codes, is a police regulation and was enacted by the legislature to promote the peace, safety and general welfare of the citizens of the state, and that being true, we doubt the applicability of the fourteenth amendment of the United States constitution to the case under consideration.

It was said in the case of *Barbier v. Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. ed. 923, a case similar in principle to the one here under consideration: "But neither the amendment [14th amendment to United States constitution], broad and comprehensive as it is, nor any other amendment was designed to interfere with the power of the state, sometimes termed its 'police power,' to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the state, develop its resources .and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts. . . . . Special burdens are often necessary for general benefits. . . . . Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon anyone, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.

" . . . . The inconvenience arising in the administration of laws from this cause are matters entirely for the consideration of the state; they can be remedied only by the state."

In the case of *Minneapolis & St. Louis R. Co. v. Beckwith*, 129 U. S. 26, 29, 9 Sup. Ct. 207, 32 L. ed. 585, the court used this language: "But the clause [sec. 1, 14th amendment to United States constitution] does not limit, nor was it designed to limit the subjects upon which the police power of the state may be exerted. . . . . The nature and .extent of such legislation will necessarily depend upon the judgment of the legislature as to the security needed by society."

It may be stated, as a general proposition, that a statute must clearly appear to be unreasonable and arbitrary before the courts are justified in interfering; and that the necessity and desirability of laws of this character are very largely matters to be determined by the legislature. (*Minneapolis & St. Louis R. R. Co. v. Beckwith,* and *Bacon v. Walker, supra.*)

In holding sec. 6872, Rev. Codes, unconstitutional upon the grounds and for the reasons assigned by the respondent in this case, it would be incumbent upon this court to hold contrary to the principles of law announced in the cases of *Sifers v. Johnson, Sweet v. Ballentyne, Spencer v. Morgan* and *Bacon v. Walker, supra.* Should we do that, it would unsettle the policy of this state which has been fixed for so many years by these decisions, and which is intended to promote the peace, safety and general welfare of the citizens of this commonwealth by the exercise of the police power of the state in the regulation of the right to the use of the public domain by the sheep, cattle and farming industries.

We have therefore reached the conclusion that sec. 6872, Rev. Codes, is not in contravention of sec. 1, art. 1 of the constitution of this state; that it is not an encroachment upon the powers of the general government; that it is a proper police regulation enacted by the legislature for the express purpose of protecting the public peace, public safety and promoting the general welfare of the citizens, and does not arbitrarily interfere with a private business or impose upon such business unusual and unnecessary restrictions; and that it is not in direct violation of the fourteenth amendment to the constitution of the United States.

It follows from the conclusions of the court as heretofore expressed in this opinion that the trial court erred in sustaining the motion of the respondents and in discharging the defendants and entering up judgment against the state. The judgment is reversed.

Sullivan, C. J., and Morgan, J., concur.