## No. 11,142.

RIFLE POTATO GROWERS CO-OPERATIVE ASSOCIATION *v.* SMITH.

Decided October 19, 1925.

Action to enjoin violation of a marketing contract. Judgment for defendant.

### *Reversed.*

1. CONTRACTS—*Unilateral—Defined.*    A unilateral contract is an agreement supported by an executed consideration, and is valid.

2. *Marketing—Consideration.*    A marketing contract between an association and producer, by which the former agrees to buy, resell, and give the latter something out of the proceeds, is based on a good consideration.

3. *Marketing—Mutuality.*    A marketing association contract held to be mutual between the several members, and for their benefit.

4. PUBLIC POLICY—*Legislation.*    The legislature has power over questions of public policy of the state.

5. MONOPOLIES—*Marketing Associations.*    A marketing association contract by which defendant agreed to sell his potatoes to the plaintiff association only, held not void under the Colorado antitrust statute.

6. CONSTITUTIONAL LAW—*Public Policy.*    An act cannot be said to be unconstitutional because it changes the rule of public policy.

7. *Marketing Act.*    The Colorado marketing act, c. 142, S. L. '23, is not unconstitutional because it provides for the enforcement of its provisions by injunction.

8.   EQUITY—*Legislation.* The legislature has as complete power over rules of equity as it has over those of law.

9.       *Rules—Legislation.* The rule of equity that specific performance will not be granted in favor of one party unless it could have been granted in favor of the other, is one established by the courts which the legislature has the right to change.

10.  AGRICULTURE—*Marketing Contracts—Enforcement.* A marketing contract drawn under the provisions of chapter 142, S. L. '23, held not to be invalid because permitting injunction or specific performance for the enforcement of its terms.

11.  CONSTITUTIONAL LAW—*Marketing Act.* The Colorado marketing act, c. 142, S. L. '23, held not to be unconstitutional as class legislation, although limited to the marketing of agricultural products.

12.      *Class Legislation.* A law is not local or special when it is general and uniform in its operation upon all in like situation. The classification adopted is to be determined by the legislature within reasonable limits, and it must have a wide range of discretion.

13.  AGRICULTURE—*Marketing Act—Contracts.* The Colorado marketing act, c. 142, S. L. '23, and contracts thereunder, held not to be in violation of the Sherman Anti-Trust Law as being an undue or unreasonable restraint of trade.

14.      *Marketing Contract.* A marketing contract executed under the provisions of chapter 142, S. L. '23, held not breached by the marketing association because it turned sales over to brokers, the contract giving it power to sell to dealers, shippers, or otherwise.

*Error to the District Court of Garfield County, Hon. John T. Shumate, Judge.*

Mr. JOHN F. REYNES, Mr. ERSKINE R. MYER, Messrs. LINDSEY & LARWILL, Mr. D. K. WOLFE, JR., for plaintiff in error.

Mr. JOHN F. NOONAN, Mr. W. F. NOONAN, for defendant in error.

Messrs. PONSFORD, PENDER & LARWILL, Mr. T. H. HOOD, amici curiae.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE plaintiff in error was plaintiff below and was defeated on trial to the court in a suit to enjoin Smith from disposing of his potatoes in violation of a marketing contract executed by plaintiff and defendant under the act of 1923, S. L. 1923, c. 142, and the case comes here on error.

Smith was a potato grower; he joined the plaintiff company and signed the standard marketing contract by which he agreed to sell his potatoes to plaintiff only. He sold to others and threatened to continue to do so, whereupon plaintiff brought this suit.

His first defense is that the contract is unilateral, and so void or voidable or unenforceable. He is twice wrong: (1) because a unilateral contract is as good as any. A unilateral contract is an agreement supported by an executed consideration. 13 C. J. 247. (2) This contract is not unilateral but bilateral, a promise for a promise. Id. We think he means that there was no consideration; but the contract of the company to buy, resell, and, on certain conditions, give him something out of the proceeds, is a good consideration. That the contract is unfair to him, that it gives the company too much advantage and power, and that, as it turns out, Smith really gets no benefit from the contract, even if true, are irrelevant. Such matters were for his consideration before he entered it. But perhaps he means that the contract ought not to be enforced by injunction because its obligations are not mutual. The mutuality is between the several members and the contract is for their benefit. The contract expressly and impliedly shows this. Section 16, reads: "This agreement is one of a series generally similar in terms, comprising with all such agreements, signed by individual growers, or otherwise, one single contract between the Association and the said Growers, mutually and individually and annually obligated under all of the terms thereof. The association shall be deemed to be acting in its own

name for all such Growers, in any action or legal proceedings on or arising out of this contract." And section 19: "It is expressly agreed that this instrument is one of a series substantially identical in terms. All such instruments shall be deemed one contract for the purpose of binding the subscriber, to the same extent as if all the subscribers had signed only one such contract."

Every member is subject to the same remedy in favor of all the others and without some such remedy the contract would be ineffectual.

Second, he claims that the contract is against public policy. In *Burns v. Wray Co.*, 65 Colo. 425, 176 Pac. 487, 11 A. L. R. 1179, and *Atkinson v. Colo. Wheatgrowers' Association*, 77 Colo. 559, 238 Pac. 1117, we held such contracts were against public policy, but the Act of 1923 changes the public policy of this state and the contract in this case follows the act. It is unnecessary to cite authority for the power of the legislature over questions of public policy, but see *Denver v. Tihen*, 77 Colo. 212, 235 Pac. 777; *No. Wis. Co-op. Tobacco Pool v. Bekkedal*, 182 Wis. 571, 197 N. W. 936; *Pulpwood Co. v. Green Bay, etc., Co.*, 168 Wis. 400, 170 N. W. 230; *Dark Tobacco etc., Ass'n v. Mason*, 150 Tenn. 228, 263 S. W. 60.

It is objected that the contract is in restraint of trade and so void under the Colorado Anti-trust Law (C. L. 1921, §§ 4036-4043), but the act of 1923, being the later act, controls the earlier.

It is claimed that the act of 1923 is unconstitutional, and many of its provisions are cited to show that it is so; but most of them are irrelevant to any question now before us; and the fact, if it be a fact, that they are unconstitutional, will not affect the constitutionality of the sections upon which this case depends. The only provisions of the act in question here are that authorizing the combination agreement to sell to one purchaser, and section 19, par. (b), which authorizes the remedies of injunction and specific performance for breach of such contract. It hardly needs to be said that the act is not un-

constitutional because it changes the rule of public policy; that would be to set public policy upon the throne of the Constitution, and though it is urged with great seriousness and earnestness that the provision for an injunction is unconstitutional, or, at least, unenforceable, because it permits an injunction where there is no equity, yet that argument, upon examination, has no more force in it than the one concerning public policy, because the legislature has as complete power over the rules of equity as it has over those of law.  So of the provision for specific performance.  It is a rule of equity that specific performance will not be granted in favor of one party unless it could have been granted in favor of the other.  But that is a rule made by the courts which the legislature has a right to change; and, moreover, as we have shown above, there is mutuality in this contract since it is a contract among the members, and injunction and specific performance are to be enforced against any member who violates it in favor of all those who do not.  As to the validity of this paragraph see *Washington Cranberries Ass'n v. Moore,* 117 Wash. 430, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077; *Phez Co. v. Salem Fruit Union,* 103 Ore. 514, 201 Pac. 222, 205 Pac. 970, 25 A. L. R. 1090, and cases there cited.  Indeed we agree with these cases that equity is necessary to adequately enforce these contracts; specific performance, where possible, or injunction to the same end.

It is claimed that the Act of 1923 is unconstitutional because it is "class legislation."  The term "class legislation" is too indefinite for consideration.  What is meant is that the act is in violation of article V, section 25, of the Colorado Constitution because it gives to agriculturists what is denied to other citizens—the right to make a contract for co-operative marketing.

In support of the act the plaintiff in error has cited *Oregon Growers Co-op. Ass'n v. Lentz,* 107 Ore. 561, 212 Pac. 811.  That case, however, is not in point, because the Oregon act applied to all persons, not to agriculturists alone, nor to any specified class.  The question, therefore,

under our act, becomes a serious one, because by sections 1 and 3 the above privilege is conferred only upon persons "engaged in the production of agricultural products" and is applied to "agricultural products" alone.

It is conceded that the legislature may reasonably classify, and it is held that "a law is not local or special when it is general and uniform in its operation upon all in like situation." *People v. Earl,* 42 Colo. 238, 264 and 265. There must be some distinguishing peculiarity which makes reasonable the exception of the designated class from the general law. The reason for such exception existing, the classification adopted is a matter to be determined by the legislature. Id. This law is general and uniform upon all in like situation. The question, then, for us to determine is whether there was a reason for the exception of the designated class. We think that, unless the classification clearly appears to be unreasonable, we must yield to the judgment of the legislature upon that point, and we think it not clearly unreasonable to say that there are reasons for maintaining stability of the markets of agricultural products beyond like reasons in case of other products, and that we must, therefore, acquiesce in this classification. The legislature in such classifications must have a wide range of discretion. *Owen County, etc., Ass'n v. Brumback,* 128 Ky. 137, 152, 107 S. W. 710. It follows that we cannot say that the act in question is a violation of article V, section 25. This reasoning, substantially as we have stated it, has been followed in other jurisdictions. *Farrell v. Port of Columbia,* 50 Ore. 169, 91 Pac. 548, 93 Pac. 254; *Owen County etc., Ass'n v. Brumback, supra; Oregon Growers v. Lentz, supra.*

It is urged that the act in question and the contract under it are in violation of the so-called Sherman Anti-trust Law, 26 U. S. Stat. 209. That act was finally construed in *Standard Oil Co. v. U. S.,* 221 U. S. 1, as prohibiting only contracts which amount to an unreasonable or undue restraint of trade in interstate commerce. See also *Phez Co. v. Salem Fruit Union, supra.* If what we have pre-

viously said is right, this act and contract cannot be classed as in undue or unreasonable restraint of trade, and it has uniformly been so held in the various states where these contracts have been considered. *Washington Cranberries Ass'n v. Moore, supra; Phez Co. v. Salem Fruit Union, supra; Tobacco Growers Co-op. Ass'n v. Jones,* 185 N. C. 265, 117 S. E. 174, 33 A. L. R. 231; *Brown v. Staple Cotton Co-op. Ass'n,* 132 Miss. 859, 96 So. 849, and other cases in North Carolina, Indiana, Kansas, Alabama and United States courts.

It is claimed that the defendant was entitled to rescind the contract by reason of the breach on the part of the company, in that, having agreed to resell by itself or by an exchange to be formed in the interest of itself and similar companies, yet the exchange turned over the sales to brokers. That is not a breach of the contract because paragraph 8 of the contract reads as follows: "The Association may sell the said potatoes within or without this state directly to dealers or shippers, or otherwise, at such times and upon such conditions and terms as it may deem profitable, fair and advantageous to the growers in any condition or form   *   *   *."

The judgment is reversed.

MR. JUSTICE SHEAFOR not participating.