No. 12,881.

ALLEN ET AL. *v.* BAILEY ET AL.
(14 P. [2d] 1087

Decided September 12, 1932. Rehearing denied October 10, 1932.

Messrs. MOYNIHAN, HUGHES & KNOUS, for plaintiffs in error.

Messrs. FAIRLAMB & FAIRLAMB, for defendants in error.

Mr. FRANK DELANEY, Mr. CLIFFORD H. STONE, Mr. RICHARD E. CONOUR, amici curiae.

*En Banc.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

BAILEY and 25 other cattlemen brought an action against Allen and about 30 other sheepmen under chapter 125, pages 443-450, Laws 1929, known as the Public Domain Range Act, to apportion and divide the use of an extensive range in Delta county, Colorado. The decree

of the district court, which followed the findings of referees, designated a certain portion of the public range as cattle range and another portion as sheep range, and contained injunctive relief. After the suit was commenced, most of the sheepmen stipulated with defendants in error as to the fixing of range lines, but four dissatisfied sheepmen, Walter January, Victor A. Phillips, Welland States and Glenn McNaught, prosecute error. They challenge the constitutionality of the statute under which the proceedings were had and allege other errors. We shall refer to the cattlemen as plaintiffs and to the sheepmen as defendants, as aligned at the trial.

The act above mentioned is entitled: ''An act relating to livestock and the regulation and use of the public domain range and providing a method to adjudicate disputes and providing penalties for the violation of this act.''

Sections 1 and 2 read as follows:

''Section 1. To prevent dissension and breach of the peace, the question as to the kind of livestock, whether cattle or sheep, that shall have the preferred or better right to graze upon any particular portion of the public domain within this state shall, from and after the passage of this act, be determined according to the use made thereof during the last grazing season prior to the passage of this act, whether such use was as a cattle or sheep range and whether the same was used as a spring, summer, fall, winter, or other kind of range; provided that a single instance of grazing or herding certain kind of livestock on any such range prior to the passage of this act and subsequent to January 1, 1929, over the protest of others in prior use and occupancy thereof, who graze a different kind of livestock will not confer a better right.

''Section 2. Any range now being used as a mixed cattle and sheep range may be apportioned and divided between the different classes of livestock, that is cattle or sheep, grazed thereon, by the district court having

264

jurisdiction whenever a controversy or dispute shall arise upon complaint of any interested party or person using said range. Any such range shall, upon final hearing, be apportioned according to the requirements of the different kinds of livestock grazed or herded thereon and the nature of the different parts of the range to be apportioned and in accordance with the equities and rights of the owners of the different kinds of livestock using such range as a class, regard being had to the extent of the user theretofore made by each class of livestock growers.''

Section 3 reads in part as follows:

''Whenever a dispute shall arise as to which respective class of livestock has the better right to graze upon any particular portion of said public domain, the district court of the county wherein such disputed area or some part thereof lies, shall have jurisdiction to determine the matters in an action in equity for an injunction to be brought by any person or persons claiming such better right and against any and all persons violating or threatening to violate any such alleged better right. * * *''

Other provisions of section 3 are that service of process may be made in person or by publication; that the procedure shall be as provided by the Code of Civil Procedure of this state; that the court may in its discretion grant a temporary restraining order or a temporary injunction as in ordinary cases in suits for injunction; that when the cause is at issue, the court shall in the first instance refer all questions of fact to three referees, one in the cattle business, and one in the sheep business, if available; the third to be a disinterested person selected by the other two, or by the court, subject to objection. Within ten days after the report of the referees is filed, either party may file written objections which the court shall hear and determine. The court may require further findings or may assume jurisdiction and determine all questions at issue and enter a final decree. If it appears that plaintiff has the preferred or better right to the use

of the public domain, the court shall enter a decree determining boundaries and enjoining and restraining the defendants from interfering with such rights of the plaintiff and others engaged in the same business, and award such other relief as justice and equity may require.

Section 4 provides in substance that when any portion of such public domain shall have been so decreed as a sheep or cattle range, or that the same is entitled to be used by sheep or cattle owners, three copies of a notice of the decree shall be posted in conspicuous places upon the range by the sheriff. Section 4 makes a violation of the act a misdemeanor, punishable by a fine of not more than $1,000, or by imprisonment in the county jail for not more than six months, or by both fine and imprisonment, in the discretion of the court.

The substance of section 5 of the act is that if any given area has been adjudged to be subject to use either as a cattle or sheep range, anyone in interest may thereafter institute supplemental proceedings for a reapportionment of the range under certain specified conditions, which change may be permitted by supplemental decree, provided that sufficient range shall be left subject to the terms of the original decree to meet the actual requirements of all persons still running livestock of the kind given the preferred or better right under the original decree. Notice of the provisions of the supplemental decree shall be given as in case of the original decree.

Section 6 reads in part: "It is hereby declared the policy of this state to preserve the grasses and vegetation on the public domain and protect the wild game of this state in their natural ranges, and especially on the winter ranges and to prevent erosion of the soil and thereby conserve the waters and water supply originating on the public domain ranges of this state and the indiscriminate and unregulated overstocking of such ranges tend to deplete and destroy such vegetation, increase erosion and diminish the water supply of the streams and springs of the State of Colorado. * * *"

Section 6 also provides for supplemental proceedings to establish the fact when the range is or is about to be overstocked, and for a decree of court determining the number of live stock the range is capable of supporting.

Sections 7 and 8 of this 1929 act are as follows:

"Section 7. Nothing herein contained shall be construed to prohibit free transit over the public domain as provided by the acts of Congress, or to confer upon any individual as such an exclusive right to the use or occupancy of any part of the public domain.

"Section 8. If any section, paragraph, clause, word or phrase of this act shall be declared unconstitutional, the invalidity thereof shall not affect the remainder of this act."

The chapter concludes with an emergency clause, declaring that the act is necessary for the immediate preservation of the public peace, health and safety. The foregoing indicates the purport of the act as far as we deem it necessary to determine its constitutionality.

Defendants contend that the 1929 act violates the following constitutional provisions and congressional enactments: Clause 2, section 3, article 4, United States Constitution, which reads: "The congress shall have power to dispose of, and make all needful rules and regulations respecting the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state"; Act of Congress, Feb. 25, 1885, c. 149, §1, 23 Stat. 321, section 1061; title 43, c. 25, p. 302, U. S. Code Ann., pertaining to enclosure of or assertion of right to public lands without title; Act of Congress, Feb. 25, 1885, c. 149, §3, 23 Stat. 322; section 1063, title 43, c. 25, p. 313, U. S. Code Ann. In substance, this section makes it unlawful to prevent or obstruct any person from peaceably entering on or settling on the public domain, or to prevent or obstruct free passage or transit over or through public lands; the Fourteenth Amendment to the United States Constitution,

which prevents the abridgment of the privileges or immunities of citizens of the United States, guarantees due process of law, and the equal protection of the laws; the "Enabling Act," passed by the Congress, upon the admission of this state into the Union, i. e., that part of section 4 thereof (C. L. 1921, p. 32), which reads, in part: "That the people inhabiting said territory do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within said territory, and that the same shall be and remain at the sole and entire disposition of the United States;" section 25, article 2, Colorado Constitution, which reads: "That no person shall be deprived of life, liberty or property without due process of law"; article 3, Colorado Constitution, relating to the division of the powers of government into its well known three distinct departments, and which prevents any branch from exercising powers properly belonging to either of the others, except as in the Constitution expressly directed or permitted; section 1, article 6, Colorado Constitution, pertaining to the vestment of judicial power in the several courts of the state; section 25, article 5, Colorado Constitution, prohibiting local or special laws in certain enumerated cases, granting exclusive privileges.

1. The defendants are the ones who argue that the act is unconstitutional, and the burden is upon them to demonstrate it. Where practicable, the statute will be construed so as to avoid conflict with the federal Constitution. *Pine Martin Mining Co. v. Empire Zinc Co.,* 90 Colo. 529, 537, 11 P. (2d) 221. The good faith of the legislature will be presumed. *People v. Morgan,* 79 Colo. 504, 507, 246 Pac. 1024; *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; *New Mexico v. Denver & Rio Grande R. R. Co.,* 203 U. S. 38, 55, 27 Sup. Ct. 1, 51 L. Ed. 78. The statute will be sustained if possible. *People v. Morgan, supra; Reid v. Colorado,* 187 U. S. 137, 153, 23 Sup. Ct. 92, 47 L. Ed. 108. And the courts will not declare a legislative act unconstitutional unless it is

268

clearly apparent that it is such. *Reichelt v. Julesburg,* 90 Colo. 258, 268, 8 P. (2d) 708. *Mayor v. Shattuck,* 19 Colo. 104, 110, 34 Pac. 947.

2. Chapter 125, L. 1929, will lend itself more readily to analysis by keeping in mind the elementary distinction between substantive law and adjective law. It has been said that the distinction between remedy and substantive right is incapable of exact definition *(Dexter v. Edmands,* 89 Fed. 467, 468), but we mean by substantive law the positive law of duties and rights which gives rise to a cause of action, as distinguished from adjective law, which pertains to practice and procedure, or the legal machinery by which the substantive law is made effective. The first is basic; the second is dependent; if the substantive law as defined by the 1929 act is not well grounded because unconstitutional, the machinery is inconsequential, because in such event the whole plant would have to be shut down. But if the substantive law is well founded, it should be made workable if possible, and the mechanics by which it is accomplished is of secondary importance, provided fundamental rights are not violated.

3. The chief substantive law here involved concerns the occupation and use of the public domain range and the right of the General Assembly to prescribe reasonable police regulations in segregating cattle from sheep, "To prevent dissension and breach of the peace." §1, c. 125, L. 1929. In general, the adjective law in question is the method prescribed by the legislature for the adjudication of disputes. The classification suggested has a peculiar importance in the instant case, because the substantive law as above indicated has had the approval of the Supreme Court of the United States. If the 1929 statute contains any novelty, it does not lie in the basic idea, but only in some of the procedure, and as to that, section 3 of the act declares that the procedure shall be as provided by the Code.

4. We approve of the following quotation from

50 C. J., p. 888 [§4 B]: "As owner of the public lands the United States has the same right and dominion over them that any other owner would have, and may protect the same from depredation. Congress is vested by the Constitution with the power to control and to make all needful rules and regulations with respect to the public domain, and the exercise of such power cannot be restricted by state legislation. But the states may also prescribe reasonable police regulations applicable to public land areas, in so far as such regulations do not conflict with congressional enactment or if congress has not acted."

In support of the last sentence above, see *McKelvey v. United States*, 260 U. S. 353, 43 Sup. Ct. 132, 67 L. Ed. 301; *Omaechevarria v. State of Idaho* (sometimes called "the Greek's case"), 246 U. S. 343, 38 Sup. Ct. 323, 62 L. Ed. 763; *Bacon v. Walker*, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499; *Bown v. Walling*, 204 U. S. 320, 27 Sup. Ct. 292, 51 L. Ed. 503.

5. *Omaechevarria v. State of Idaho, supra* (246 U. S. 343), holds that the law of Idaho segregating sheep from cattle was primarily designed to preserve the peace, and is not an unreasonable or arbitrary exercise of the police power; that such act does not deny the equal protection of the laws or contain arbitrary discriminations; that it is not wanting in due process; that the police power of the state may be exercised over the federal public domain, at least where there is no legislation by Congress on the subject; that such an act does not conflict with section 1, chapter 149, 23 Stat. 321 (section 1061 U. S. Code Ann.) and that the exclusion of sheep owners under certain circumstances does not interfere with any rights of a citizen of the United States, inasmuch as rights to graze stock on the public lands are merely by sufferance. Since "the Greek's case" was announced, it has been frequently cited as authority by the Supreme Court of the United States and lesser courts, but we know of no case that denies its force. It is cited as one of the prece-

270

dents in *Colorado v. Toll*, 268 U. S. 228, 231, 45 Sup. Ct. 505, 69 L. Ed. 927, upon the proposition that the state of Colorado has not surrendered its legislative power.

Economic conditions similar in many respects to those existing in Idaho and other western states prevail in Colorado. The Idaho Penal Code, construed in the above case, is very brief as compared with ours, but it is difficult to find any difference in substantive law, or in the evils that the two statutes attempt to correct. The additional pages in the Colorado act are only an elaboration of the same general principle. They contain a carefully worked out system of procedure which in its absence might be left open to conjecture or for the ingenuity of the judges to improvise to make the law effective. Provisions in our statute that go beyond the Idaho act do not seem to suggest any additional federal question.

6. Counsel for plaintiffs, and amici curiae, assert that every question of a federal nature has been settled adversely to defendants' contentions in *Bacon v. Walker* and *Omaechevarria v. State of Idaho, supra,* but counsel for defendants differ with them in the interpretation of those cases. However, the dispute is determined in plaintiffs' favor by the subsequent construction placed upon such decisions by the Supreme Court of the United States itself in *McKelvey v. United States, supra.* The opinion in the latter case was unanimous; it was written by Mr. Justice Van Deventer, one of the justices who dissented in "the Greek's case." Section 3, 23 Stat. 322, Act of Congress, Feb. 25, 1885, was attacked in the McKelvey case as an encroachment upon the police power of the states, but the court there said (260 U. S. 353, 358-360) :

"The section in terms, and as we construe it, deals with the obstruction by unlawful means of fee passage over the public lands. It makes no attempt at dealing with acts of personal violence as such. Only when and as they are made the means—resorted to for the purpose —of effecting the prohibited obstruction does it take any

account of them. The power of the State to deal with and punish them is not affected. Such acts may be an ingredient of an offense against the United States and also in themselves an offense against the State. * * *

"It is firmly settled that Congress may prescribe rules respecting the use of the public lands. It may sanction some uses and prohibit others, and may forbid interference with such as are sanctioned. * * * The provision now before us is but an exertion of that power. It does no more than to sanction free passage over the public lands and to make the obstruction thereof by unlawful means a punishable offense.

"It is also settled that the States may prescribe police regulations applicable to public land areas, so long as the regulations are not arbitrary or inconsistent with applicable congressional enactments. Among the regulations to which the state power extends are quarantine rules and measures to prevent breaches of the peace and unseemly clashes between persons privileged to go upon or use such areas.

"Two regulations of the latter type by the State of Idaho have been sustained by this Court,—one making it unlawful to herd sheep or permit them to graze within two miles of the dwelling house of another having a possessory claim to the land whereon the house stands, *Bacon v. Walker,* 204 U. S. 311, and the other making it unlawful to herd sheep or permit them to graze on a range which by prior usage has come to be a cattle range, *Omaechevarria v. Idaho,* 246 U. S. 343. As construed by the Supreme Court of the State, these regulations are not intended to cover the driving of sheep from one range to another, nor such occasional grazing as is done by the sheep while being driven or during temporary stops for needed rest or similar purposes."

7. Notwithstanding the above decisions, defendants urge that "for all practical purposes," this is a suit to quiet title to lands owned by the United States government, and hence is void. The accusation would

be serious if justified, but neither the statute nor the decree says anything about title to lands, and we will not interpolate the word "title" to defeat the act. Imaginary conditions, not intended to be enforced and incapable of enforcement, cannot be injected into the statute to render it unconstitutional. *People v. Texas Co.*, 85 Colo. 289, 296, 275 Pac. 896. Defendants also point to the words "the preferred or better right," contained in the statute and argue therefrom that this is an attempt to confer grazing rights upon the federal public domain, but we do not so understand it. The state has no right therein to confer, and did not attempt it; the right or privilege, such as it is, existed before the passage of the act. It exists only by sufferance of the United States. *Omaechevarria v. State of Idaho, supra.* It consists merely of an implied license to occupy and use such lands as long as the government does not forbid it. *Richards v. Sanderson*, 39 Colo. 270, 89 Pac. 769; *People v. McPherson*, 76 Colo. 395, 232 Pac. 675. We give the words "right" and "preferred or better right" the above limited meaning. In this we have a precedent in "the Greek's case." (246 U. S. 343.) Although the Idaho statute refers to "the priority of possessory right between cattle and sheep owners," our highest court did not exaggerate the word "right" beyond its intendment to bring it into disfavor with the Constitution or acts of Congress, and we shall not do so. This state has always recognized the suzerainty of the United States over its public lands. See Enabling Act; also, *Richards v. Sanderson* and *People v. McPherson, supra.* The legislature still recognizes it. C. 125, §7, S. L. 1929. And regardless of legislative intent, we would be quick to declare the act unconstitutional if in its necessary operation it interfered with the dominion of the federal government *(People v. Morgan, supra)*, but it is free from this defect. The General Assembly has only responded to imperative requests of federal executives, frequently made upon the states, to bear their own burdens as far as possible in

preserving peace within their borders. The inevitable effect of the act is to enhance equality of enjoyment of citizens in the fruitful public domain, but even if we were doubtful as to the necessity for the legislation, it is expressive of the public policy of the state, with which the courts will not interfere unless the statute be found to contravene federal laws or to invade constitutional rights.

Other western states have adopted regulatory measures in varying terms pertaining to the grazing of live stock on public lands. Arizona: *Hazas v. State,* 25 Ariz. 453, 219 Pac. 229; *Hancock v. State,* 31 Ariz. 389, 254 Pac. 225. Idaho: *Omaechevarria v. State of Idaho, supra,* affirming *State v. Omaechevarria,* 27 Idaho 797, 152 Pac. 280; *State v. Horn,* 27 Idaho 782, 152 Pac. 275; *Bacon v. Walker, supra,* affirming *Walker v. Bacon,* 11 Idaho 127, 81 Pac. 155.; *Bown v. Walling, supra.* Nevada: *In Re Calvo,* 50 Nev. 125, 253 Pac. 671. New Mexico: *State v. Coppinger,* 21 New Mex. 435, 155 Pac. 732; *Yates v. White,* 30 New Mex. 420, 422, 235 Pac. 437. Oregon: *Big Butte Horse & Cattle Ass'n v. Anderson,* 133 Ore. 171, 289 Pac. 503.

8. It is essential to the validity of the statute that it shall describe a standard of conduct so that it can be understood. *Cline v. Frink Dairy Co.,* 274 U. S. 445, 458, 47 Sup. Ct. 681, 71 L. Ed. 1146. This requirement is amply met by chapter 125, Session Laws 1929. It is not claimed that it is word for word like the statute of any other state called to our attention, but in substantive law they are in the same category. On procedural questions differences may be found, but defendants have not suggested any federal question or matter of substantive law that has not been determined adversely to their contentions.

9. We understand counsel for defendants to interpret our opinion in *People v. McPherson, supra,* as going so far as to hold that *any* state regulation over federal public lands is void, even if the legislation is not

hostile to the laws of the United States, but this is incorrect. Such a forced interpretation would be tantamount to an extrajudicial renunciation of the legislative power of this state; it would place heavy odds in the hands of more favored states in a matter of vital public concern, but it was not and is not either our intention or desire to do this, nor are we vested with the right to do it. In the above case of *People v. McPherson,* we pronounced chapter 174, Session Laws 1923, known as the "Migratory Livestock Act," as invalid, but the evil of that legislation lay in the fact that it discriminated in favor of resident stock owners against nonresident stock owners. This was the palpable "regulation" attempted which we discountenanced, and that opinion must be so limited. Its undue extension to a different state of facts in the present case would bring it into conflict with decisions of the Supreme Court of the United States that were neither mentioned nor considered by us in the McPherson case. Furthermore, our opinion there had nothing whatever to do with an act to prevent dissension and breach of the peace. The condemned 1923 act was *promotive* of dissension between citizens of different states. Like all cases, People v. McPherson must be read in the light of its own facts, and if any general statement in it is susceptible of misconstruction, we should modify it to comport with the decisions of our highest court. We follow it on federal questions. *Boettcher v. Auslender,* 76 Colo. 399, 403, 232 Pac. 683; *Porter v. Hammitt,* 78 Colo. 320, 322, 241 Pac. 543.

10. Defendants also cite *Utah Power & Light Co. v. United States,* 243 U. S. 389, 37 Sup. Ct. 387, 61 L. Ed. 791, but the case does not aid them. It relates to rights of way and the use of lands in federal forest reservations for electric power purposes. Such reserves are not involved at present; we discussed the subject in *Ratcliff v. Miller,* 86 Colo. 202, 280 Pac. 486, wherein we followed *United States v. Grimaud,* 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. The Utah Power and Light Com-

pany case is distinguishable from the case at bar in another important particular: there, the defendants challenged the supremacy of the United States over lands that it owns, but the 1929 act expressly recognizes this paramount authority and the present decree does not attempt to interfere with it. Existing laws are read into the decree. The Secretary of Agriculture has established rules and regulations pertaining to grazing privileges within national forest reserves, under the authority of Congress, but our General Assembly has not engaged in that forbidden field of state legislation.

We are convinced that the 1929 act in question does not violate the Constitution of the United States or any act of Congress, and we pass to the consideration of the Colorado Constitution.

■ 11. We must rely largely upon our own resources in the determination of local questions, for the Supreme Court of the United States does not concern itself with the question of whether a state statute contravenes the constitution of the state. *Miller v. Strahl,* 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364. That court reads a state statute in the light of the construction placed upon it by the state court. *Bandini Petroleum Co. v. Superior Court of California,* 284 U. S. 8, 52 Sup. Ct. 103, 76 L. Ed. 123; *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 73, 31 Sup. Ct. 337, 55 L. Ed. 369, 375, Ann. Cas. 1912C, 160.

■ ■ 12. We do not find that chapter 125, Laws 1929, violates any provision of the Colorado Constitution. The due process clause (section 25, article 2, Colo. Const.) is similar to the federal Constitution and has been considered. Neither article 3 nor section 1, article 6, Colorado Constitution, is infringed upon, since the administrative powers to be exercised by the district court under the 1929 act are only incidental to its judicial functions. *People v. Lee,* 72 Colo. 598, 609, 213 Pac. 583. The classification between cattle and sheep is not arbitrary or unreasonable; the statute is uniform in its oper-

ation upon all members of the class to which it is made applicable, and so the owners of such stock are not denied the equal protection of the laws. 6 R. C. L. p. 380, §373; *Consumers' League v. Colo. & So. Ry. Co.*, 53 Colo. 54, 125 Pac. 577; Ann. Cas. 1914A, 1158. Section 25, article 5, Colorado Constitution is not disturbed; a law is not local or special when it is general and uniform in its operation upon all in like situation. *People v. Earl*, 42 Colo. 238, 264, 94 Pac. 294; *Rifle Potato Growers Ass'n v. Smith*, 78 Colo. 171, 176, 240 Pac. 937.

██ ██ 13. Defendants chafe under the injunction and restraining order features of the act, but without reason. In this respect, it is an advancement over the Idaho statute, which does not contain such a provision, but injunctions are granted in instances too numerous to mention. The remedy is applied to restrain the wrongful diversion of water, even though the act of the wrongdoer is a crime. *Rogers v. Nevada Canal Co.*, 60 Colo. 59, 151 Pac. 923; *Olney Springs Drainage District v. Auckland*, 83 Colo. 510, 267 Pac. 605. It lies to enforce the provisions of the Colorado Marketing Act, chapter 142, Laws 1923. *Rifle Ass'n v. Smith, supra.* Language used in a liquor case, decided in *Eilenbecker v. District Court of Plymouth County*, 134 U. S. 31, 40, 10 Sup. Ct. 424, 33 L. Ed. 801, is apropos. The court said: "Certainly it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil, as to punish the offense as a crime after it has been committed." See also *Mugler v. Kansas*, 123 U. S. 623, 673, 8 Sup. Ct. 273, 31 L. Ed. 205. The Colorado act in question may be said to give recognition to the adage that "An ounce of prevention is worth a pound of cure," and to withhold injunction in a proper case would deprive courts of one of their most powerful resources. "The power to punish for contempts is inherent in all courts." *Eilenbecker v. District Court, supra,* at page 37 of the opinion, and we refer once more to the above quotation from *McKelvey v. United States,* wherein it is

said that regulations to which the state power extends "are * * * measures to *prevent* breaches of the peace," etc. (The italics are ours.) We do not find any feature of the 1929 act involved in this proceeding that merits our disapprobation.

14. Error is assigned because the court submitted the matter to the referees without instructing them as to their duties and the rights of the parties under the law and the evidence. The record fails to show what instructions, if any, defendants requested. The assignment is therefore without merit. In fact, defendants' main efforts were directed to the prevention of *any* submission of the cause to referees. We are the more reconciled to the absence of such instructions since it is apparent that the referees did not depart from the law or the evidence.

15. The assignment that the court erred in receiving the report of the referees because "Rendered upon incompetent, irrelevant and immaterial testimony," and "Rendered upon evidence not competent to be taken into consideration," is too indefinite and might be dismissed for this reason. The importance of the case, however, caused us to make search as to what defendants meant; they argue it in their briefs. Some of it pertains to testimony showing that certain plaintiffs held permits upon the Federal Forest Reserve adjacent to the public domain area in dispute; other testimony showed that some of the plaintiffs owned deeded lands adjacent thereto. There was also evidence relating to various protests of cattlemen, made prior to January 1, 1929, against the herding of sheep on the disputed area. These seem to be the main objections of defendants to the admission of testimony, as mentioned generally in their exceptions to the report of the referees. The hearing was wide in its scope; the referees were not lawyers, but the evidence sustains the decree, regardless of the testimony to which objection is now made. The latter may be rejected as surplusage. We observe also that

whether it was relevant or not, the defendants themselves made free use of testimony of a similar character upon their own behalf. Indeed, it appears at the close of the evidence that defendants sought and obtained a stipulation with plaintiffs as to land ownership of several of the defendants. This was one of the informal ways in which counsel elected to try the case before laymen, although interspersed with desultory objections, not seriously urged there, and overcome by implied waivers. We intend nothing uncomplimentary toward eminent counsel; they have handled a difficult situation with skill and ability, but we should not be so hypercritical or unjust as to penalize plaintiffs for joining with defendants in unimportant irregularities before the referees. Defendants acquiesced therein by their own conduct, and even if the testimony mentioned were eliminated, it would not affect the result.

The record contains the report of the referees, with a transcript of the testimony taken before them, and we entertain no doubt as to the lawful and equitable apportionment of the range as determined by them and as approved by the court.

We have considered all objections and find no error in the record.

Judgment affirmed.

MR. JUSTICE BURKE and MR. JUSTICE ALTER dissent.